BLOOD vs. NORTHUP and CHICK.

An instrument in writing in words following: "$649.79. Received, Lawrence, May 29th, 1857, of Wilson Bennett, six hundred and forty-nine and seventy-nine one hundredth dollars, payable to his order, on return of this certificate, in current funds. (Signed) J. BLOOD." is to be regarded as a promissory note.

Whether such a note, being payable to the payee or his order, in "current funds," can be deemed *negotiable*, questioned. Authorities *pro* and *con* upon the point cited.

The "Act concerning bills of exchange and negotiable promissory notes," (*stat.* '55, *p.* 139,) and the "Act concerning bonds and notes," (*pp.* 155–6) are to be considered together.

Section 2 of "An act concerning bonds and notes" makes promissory notes assignable by indorsement. Section 3 expressly provides that the maker or obligor may interpose the same defense against the assignee as he might have done against the assignor.

As between the original parties to the note, the consideration may be inquired into, and a failure thereof, if proven, will be fatal to its validity. In this case, the plaintiffs below, being assignees, occupy the same status in Court that the payee would have had if he had brought the action. The defendant below is not estopped from pleading a failure of consideration to the note by the acknowledgment therein of the receipt of the money expressed on its face.

In a suit on a note, the consideration of which was a draft, which proves to have been forged, the maker may set up this defense, without restoring or offering to restore the draft.

The facts in the case fully appear in the opinion of the Court.

*E. S. Lowman,* for plaintiff in error.

I. The ruling of the Court below on the demurrer was erroneous, because

1. The writing sued upon is not negotiable by the law merchant. (*Chitty on bills* 133 *and cases cited.*)

2. The receipt is payable in "current funds." To be negotiable, it should be payable in money. (*Chitty on bills, p.* 595, 12*th ed.;* 4 *Mass. R.* 245; 5 *Cow. R.* 186; 10 *Serg. and Rawle* 94; 3 *Blackford* 153; 14 *Peters.*)

3. The words, "current funds," qualify the promise, in that the defendant below promised to pay only such funds as should be current, at the place of payment, when the receipt should be presented. (9 *John.* 120; 19 *do.* 144; 23 *Wend.* 71.) Unless the holder could have refused anything but gold and silver in payment under the law, the written obligation to pay is not negotiable. (3 *Kent's Com.* 87, 7th ed.; *Story on bills* 53; 6 *Humphrey Term R.* 303; 9 *John. R.* 120; 19 *id.* 144; 10 *Serg. and Rawle* 94; 3 *McLean* 106.)

II. The writing sued upon is not negotiable under the laws of Kansas. (*Stat.* 1855, *pp.* 155–6, §§ 1, 2, 3, 4.)

1. The writing is dated May 29th, 1857. The statute referred to was at that time in force, and governs the contract.

2. The paper sued upon is "a note in writing made and signed," by plaintiff in error, "whereby he promised to pay" to Wilson Bennett or his order "a sum of money" in current funds, and comes within the provisions of this statute. (*Stat.* '55, *p.* 155, § 1.) It is, in effect, a note payable on demand. (7 *Mo. R.* 42; 10 *Wend.* 677.)

3. The nature of the defense, in this action, is not changed by the indorsement of the note for value received before due; the defendant below could make the same defense against the note in the hands of the assignee as in the hands of the payee. (*Stat.* '55, *p.* 156, § 3; *Ewing* vs. *Miller*, 1 *Mo. R.* 234.)

III. By the common law, prommissory notes were not negotiable. (3 *Kent Com.* 84.) They were made negotiable by the statute of 3d and 4th Ann, chapter nine. (6 *Mod. R.* 226; 4 *Term R.* 151; 1 *Barn. & Cres.* 129; 1 *Blackford* 14, 81.)

When this contract was made, the law merchant was not in force in this Territory. (*Stat.* '55, *p.* 469.)

The common law of England, and all statutes made prior to the fourth year of James the I., only, have been made, by statute, a part of the law of Kansas. (*Stat.* '55, *p.* 469.) The statute of Ann, therefore, is not in force by virtue of the statute of Kansas referred to.

The statute of 1855 (*pp.* 155–6) is a full and complete law in the case.

IV. Defendants in error claim that under section fifteen, chapter fourteen, statute '55, all notes payable to order or bearer are negotiable, the same as inland bills of exchange. Such a construction would in effect make the whole of chapter fifteen, statute '55, of no effect.

V. If the receipt is not negotiable by the law merchant, or if that law was not a law of Kansas, or if a valid law at the completion of the contract made it non-negotiable, then, in either case, the plaintiff in error had a right to interpose any defense to a suit upon the receipt which he might have set up as against the orignal payee, and the Court erred in refusing him permission to make the defense set up in his answer in the Court below.

*Gov. Shannon,* for defendants in error.

The error complained of is upon the ruling of the Court below on the demurrer to the plea, in substance as follows: That Bennett, payee of the note, gave plaintiff in error a draft for nine hundred dollars, for which plaintiff paid him two hundred and fifty dollars and twenty-one cents in cash, and gave the note in question for the balance; that the draft purchased of Bennett was an altered and forged draft; that the note in question is not negotiable, and that the plaintiff in error can avail himself of the same defense against the note in the hands of the assignee as he could if the suit was brought in the name of the payee.

It is claimed that the note in question is not negotiable. This is the only question in the case. If it is negotiable, it is conceded that there is no error in the record.

Blood *v.* Northup and Chick.

An acknowledgment in writing in a specific sum and for a valuable consideration raises a promise to pay, and is, in law, a note. (*Finley vs. Shinly & Hoffman*, 7 *Mo. R.* 42; 10 *Wend. R.* 677; 2 *Oowen* 536.)

It appears, on the face of the note, that it was given for value received, as it acknowledges the receipt of six hundred and forty-nine dollars and seventy-nine cents.

It was claimed, in the Court below, that because this note is payable in "current funds," it is not a commercial note, and consequently not negotiable. "Current funds" means money—that which passes and is received as money. These words can receive no other legal construction. It is not a promise to pay in bank notes, or the paper of any particular bank, or in foreign bills, but in "current funds;" that is, in money, or that which is received and which passes as money.

In the case of *Keith vs. Jones* (9 *John. R.* 120) a note, payable to A. or bearer in New York State bills or specie, was held to be a negotiable note, upon the ground that the bills mentioned meant bank paper, which, in conformity to general usage and understanding, are regarded as cash; and that the meaning was the same as if payable in lawful current money of the State.

In the case of *Judah vs. Harris* (19 *Johns. R.* 144) it was decided that a promissory note, payable at a particular place in the bank notes current in the city of New York, was a negotiable note.

In the case of *Swetland et. al. vs. Creigh* (15 *Ohio R.* 118) the Supreme Court of Ohio decided that a promissory note for two hundred dollars, payable in current Ohio bank notes, is for a sum of money certain, and negotiable.

In the case of *Morris vs. Edwards* (1 *Ohio R.* 80) is decided, the same thing.

Other cases might be referred to, to the same purport. Now, if a note, payable in bank notes, or the current bank notes of a State or particular place is negotiable, surely a note,

acknowledging the receipt of six hundred and forty-nine dollars, and promising to refund this sum in *current funds*, should be held so. There can be no objection to this note on the ground of its being payable in current funds.

This brings us to the real question in this case. How do the statutes of this Territory, in force at the time this note was given, effect this note?

There are two acts of our Legislature (*stat.*'55, *pp.* 139 and 155) which bear on this sbuject, and are to be construed together: the act concerning bonds and notes, and the act concerning bills of exchange and negotiable promissory notes.

The third section of the act in relation to bonds and notes provides "that the nature of the defense of the obligor or maker shall not be changed by the assignment, but he may make the same defense against the bond or note in the hands of the assignee that he might have made against the assignor." The second section of this act makes all bonds and promissory notes for money or property assignable.

The fifteenth section of the act concerning bills of exchange and negotiable promissory notes provides as follows: "The payees and indorsees of every such negotiable note, payable to them or order, and the holders of every such note, payable to bearer, may maintain an action for the sums of money therein mentioned, against the makers and indorsers of them respectively, in like manner as in cases of inland bills of exchange, and not otherwise." Both these statutes are taken from the Missouri statutes. The first named act makes certain bonds and notes assignable, and the fifteenth section of the above act makes certain notes *negotiable*. It creates, like the English statute and the statutes of the various States, a class of mercantile paper. By this section, (*Mo. stat., vol.* 1, *pp.* 295–6 *and* 319,) to make a note negotiable, it must be made payable to order or bearer. All other notes and bonds fall within the provisions of the act in relation to bonds and notes, and are assignable, but not negotiable.

Blood *v.* Northup and Chick.

To understand our Legislature on this subject, we must look at the statutes of Missouri, from which our statutes were copied, with some omissions. The Missouri statute in relation to bonds and notes is the same with ours. (*Vol.* 1, *p.* 319.) The Legislature of this Territory, in adopting the Missouri statute in relation to bills and negotiable promissory notes, omitted the fifteenth section (*vol.* 1, *pp.* 295–6), which provides that every promissory note for the payment of money, expressed on the face thereof, to be for value received, *negotiable* and *payable* without *defalcation,* shall be due and payable as therein expressed, and shall have the same effect and be negotiable in like manner as inland bills of exchange. This section of the Missouri statute created a class of commercial paper in that State unknown in the commercial world, and unknown in any State of this Union. Our Legislature, therefore, wisely omitted this section of the Missouri statute, but adopted the sixteenth section thereof, which is the fifteenth section above quoted of our act. In adopting this section of the Missouri statute, the Legislature omitted to strike out the word "*such,*" which refers to the preceding section in the Missouri act not adopted by our Legislature. In reading the fifteenth section then, the word *such* is to be omitted. It has no antecedent to refer to. (*See State vs. Beasley, 5 Mo. R.* 91.)

The law, then, in this Territory, in regard to notes, is the same as in the other States, except Missouri. A note, payable to bearer or order, is negotiable, and is placed on the same footing of inland bills of exchange. All other notes come under the provisions of the act in relation to bonds and notes, and are assignable, but not negotiable.

By this construction, force and effect are given to the fifteenth section of the act in relation to bills and negotiable notes, and also to the act in relation to bonds and notes. The construction contended for on the other side, gives no force whatever to the fifteenth section of the above act.

The proper construction makes these two acts harmonious, by making them act on different classes of paper.

By the Court, BAILEY, J.   *Petition in error* to reverse the judgment of the United States District Court for the Second Judicial District of Kansas Territory, sitting in the county of Douglas for the trial of causes arising under the laws of said Territory, at the October term, 1859.

The original action was brought by the defendants in error in the Court below upon the following certificate or memorandum in writing, viz.:

"$649.79.   Received, Lawrence, May 29, 1857, of Wilson Bennett, six hundred and forty-nine and seventy-nine one hundredth dollars, payable to his order, on return of this certificate, in current funds.                    J. BLOOD."

On the back of which was the following indorsement, viz.:

"Pay Northup & Chick.

WILSON BENNETT."

The petition of plaintiffs (defendants in error), in the Court below, is in common form, setting forth the execution and delivery of the writing declared on, on the day of its date, by defendant to the payee, Wilson Bennett, and its subsequent indorsement and delivery by said Bennett on the same day to the plaintiffs, for the consideration expressed on its face, presentation and demand of payment by plaintiffs and refusal by defendant.

In their answer, the defendant (plaintiff in error) sets up two pleas as a defense to the action, to wit:

First. That defendant Blood purchased of a person calling himself Wilson Bennett a draft, drawn by A. A. Tucker & Co., of Chicago, upon J. J. Anderson & Co., of St. Louis, payable to one Nathaniel Miller or order, for nine hundred dollars, and paid to said Bennett two hundred and fifty dollars and twenty-one cents in cash, and gave him the writing declared on for the balance.

That the draft so purchased of Bennett by defendant was an altered or forged draft, having been altered from a draft for one hundred dollars to a draft for nine hundred dollars, and that said draft was refused payment by the drawers, on the ground of forgery. That the writing declared on by plaintiffs is not negotiable, and that defendant can avail himself of the same defense against plaintiffs that he would have had as against Bennett.

The second plea denies the indorsement and delivery of the writing or certificate declared on, by said Bennett to plaintiffs, alleged in plaintiffs' petition.

To the first plea, the plaintiffs below demurred and the Court sustained the demurrer.

The issue joined on the second plea was submitted to a jury, who returned a verdict for the plaintiffs, assessing the damages at seven hundred and forty-eight dollars and eighty-nine cents, for which the Court rendered judgment.

The errors complained of are two, viz.:

First. That the Court erred in refusing the instructions to the jury prayed for by defendant's counsel.

Second. That the Court erred in sustaining the demurrer.

With regard to the first assignment of error, it is only necessary to remark that the record does not show that *any* instructions to the jury were requested to be given on the trial.

The only question to be considered, therefore, would seem to be the ruling of the Court below, in sustaining the demurrer.

In considering this question, it may be proper first to determine the legal character of the writing declared on, and we find no difficulty in reaching the conclusion that it is to be regarded as a promissory note.

"A promissory note, or, as it is frequently called, a note of hand, is an absolute promise in writing, signed but not sealed, to pay a specified sum at a time therein limited, or on demand

or at sight, to a person therein named, or to his order, or to the bearer." (*Byles on Bills, p.* 4.)

"An acknowledgment of indebtedness in writing, in a specific sum, for a valuable consideration, raises a promise to pay, and is, in law, a note." (*Finney vs. Shirley et. al.,* 7 *Mo.* 42.)

The writing declared on is, in its terms, payable to Wilson Bennett or his order, in "*current funds;*" and it may well be questioned whether such a note can be deemed negotiable. On this point the authorities are numerous and somewhat conflicting.   In England, it has been held that, to be negotiable, a note must be for money *in specie,* and therefore a promise to pay in "Bank of England notes" is not a promissory note. (*Byles on Bills,* 171 [70] *and cases cited.*)

So a note, payable in *current* funds or "New York" funds, held not negotiable.   (*Hasbrouck vs. Palmer,* 2 *McLean* 10.)

So, in Missouri, a bill drawn, payable *in currency,* was held to be not a bill of exchange.   (*Farwell et. al. vs. Kennet et. al.* 7 *Mo.* 595.)

So a note for a sum certain, payable to A. or order in "foreign bills" (meaning, thereby, bills of country banks), held not to be a good promissory note within the statute, and not negotiable.   (*Jones vs. Fales,* 4 *Mass.* 245.)

So in New York a note, payable in New York or Pennsylvania paper currency, to be current in the State of Pennsylvania or New York, is not a promissory note within the statute. (*Leiber vs. Goodrich,* 5 *Cowen* 186.)

So in Pennsylvania it was held that a promissory note, payable to A. B. or order, in notes of the chartered banks of Pennsylvania, was not a negotiable note, on which an indorsee could sue in his own name.   (*McCormick vs. Trotter,* 10 *Serg. & R.* 94; *Cook vs. Satterlee,* 6 *Cowen* 108.)

So in South Carolina it was held that a paper. medium was not money, and therefore a note, payable in a paper medium, is not assignable.   (*Lungo vs. Kahne,* 1 *McCord* 115; *McClasen vs. Nesbitt,* 2 *Nutt & McCord* 519.)

So a draft, payable in "Arkansas money," was held not to be negotiable. (*Hawkins vs. Watkins*, 5 *Pike* 481, cited in *Byles on Bills—note.*)

On the other hand a bill, payable in "funds current in the city of New York," was held to be payable in gold or silver or their equivalent, and therefore good as a bill of exchange. (*Lacy vs. Holbrook*, 4 *Ala.* 88.)

So in Mississippi, a note for a sum certain, payable in cotton at a fixed price, a good promissory note, and may be declared on as such. (*Rankin vs. Sanders*, 6 *How. Miss.* 52, cited in *Byles on Bills ut supra.*)

So it was formerly decided in New York that a note, payable to A. or bearer, in New York State bills or *specie*, was a negotiable note within the statute, upon the ground that the bills mentioned meant bank paper which, in conformity to general usage and understanding, are regarded as cash, and, therefore, that the meaning was the same as if payable in the lawful current money of the State. (*Keith vs. Jones*, 9 *Johns.* 120.)

So a promissory note, payable at a particular place in "bank notes, current in the city of New York," was held to be negotiable. (*Judah vs. Harris*, 19 *Johns. R.* 144.)

So, likewise, in Ohio, a note, payable in current funds of the State of Ohio, was held to be a note payable in money and negotiable. (*Swetland vs. Craigh*, 15 *Ohio R.* 118. See, also, *Morris vs. Edwards*, 1 *Ohio* 189, and *White vs. Richmond*, 16 *Ohio* 5.)

But without determining the relative weight or preponderance of the conflicting authorities upon this point, we proceed to an examination of the Kansas statutes of 1855, the provisions of which we apprehend must be deemed conclusive in this case.

The "Act concerning bills of exchange and negotiable promissory notes," statutes of Kansas, 1855, page 139—after

fourteen sections exclusively applicable to bills of exchange—provides as follows, viz.:

"SEC. 15. The payees and indorsees of every such nego-tiable note, payable to them or order, and the holder of every such note, payable to bearer, may maintain actions for the sums of money therein mentioned, against the makers and indorsers of them respectively, in like manner as in cases of inland bills of exchange, and not otherwise."

It was agreed in the argument at bar that this statute is a literal transcript from the Missouri act of the same title, ex-cept that the fifteenth section of the original Missouri act was entirely omitted from the Kansas act.

The omitted section provided that certain notes herein described, which must contain the words "for value received," and negotiable and payable without defalcation, shall be due and payable as therein expressed, and shall have the same effect and be negotiable in like manner as inland bills of ex-change.

It was claimed in the argument for defendants in error that, as by the omission of the original fifteenth section the word "such," in the fifteenth section of the Kansas act—which was the sixteenth section of the Missouri act from which it was copied—is left without an antecedent; that the section is to be construed *without the word such*. This would place all negotiable notes on the footing of inland bills.

In the absence of all other statutory provisions, this con-struction might be admissable.

But the "Act concerning bonds and notes," Kansas statutes of 1855, pages 155–6, provides:

"SECTION 1. That all notes in writing, made and signed by any person or his agent, whereby he shall promise to pay to any other person or his order or unto bearer, any sum of money or property therein mentioned, shall import a consider-ation and be due and payable as therein specified.

Blood *v.* Northup and Chick.

"Sec. 2. That all bonds and promissory notes, for money or property, shall be assignable by an indorsement on such bonds or promissory notes, and the assignee may maintain an action thereon in his own name, against the obligor or maker, for the recovery of the money or property, specified in such bonds or notes, or so much thereof as shall appear to have been due at the time of the assignment.

"Sec. 3. The nature of the defense of the obligor or maker shall not be changed by the assignment, but he may make the same defense against the bond or note in the hands of the assignee that he might have made against the assignor."

The first section of this act declares that all written promises therein described shall be subject to the provisions of the act.

Section two makes them assignable by indorsement, and gives the assignee the same property in them the assignor had before indorsement, with the right to maintain an action in his own name; while section three expressly provides that the maker or obligor may interpose the same defense against the assignee as he might have done against the assignor.

The first section plainly includes in its provisions negotiable promissory notes. Hence, were the Court to adopt the suggestion to construe the fifteenth section of the "Act relating to promissory notes and bills of exchange" *without the word such,* it would, in effect, declare the existence and validity of two statutory enactments, relating to the same subject matter (to wit, negotiable promissory notes), utterly conflicting and repugnant in their provisions.

While the one provision would place "every negotiable note" upon the footing of inland bills, the other still more positively declares that *all* such shall be assignable and liable to the same defense in the hands of indorsees as of payees. Such a construction must be deemed inadmissable, and we are forced to conclude that the defendants in error, by the indorsement

of Wilson Bennett, take the writing declared on, subject to the provisions of section three of the "Act concerning bonds and notes."

It was claimed that the plaintiff in error, by the act of signing the writing declared on and delivering it to the payee, was estopped from pleading a failure of consideration, inasmuch as said writing contains an express acknowledgment of the receipt of so much money. But it is too well settled for argument that, as between the original parties, the consideration of a note may be inquired into, and a failure of consideration, if proved, will be fatal to its validity. And in this case the plaintiffs must be considered as occupying the same status in Court that Wilson Bennett would have had if he had brought an action on the note in his own name.

But it is further objected that, by interposing the plea of failure of consideration to the plaintiffs' demand, the defendant is, in effect, seeking to rescind the original contract without restoring what he has received under it, namely, the forged draft. The objection is not valid.

The defendant is not seeking to rescind his contract. He is not seeking to recover back the two hundred and fifty dollars he has already paid under it. In such a case it is not necessary that he should restore or offer to restore. He has performed a part of his contract, while his adversary is discovered to have performed nothing on his part. To such a case, the rule contended for does not apply. (*Lewis vs. McMillen*, 31 *Barbour* 395.)

The case of *Withers vs. Greene* (9 *Howard* 213) is not only conclusive on this point, but the whole case, in all its leading features, bears a striking analogy to the one at bar.

That was an action brought upon a sealed note or "single bill," negotiable in its terms, made in Alabama by the defendant, and indorsed by the payee to the plaintiff, before due. By the laws of Alabama, such notes were placed upon substantially the same footing as bonds and notes by the third

Blood *v.* Northup and Chick.

section of the statute of Kansas above cited. The note was given in part payment for two fillies, sold to defendant by the payee of the note, and represented to have been sound and of high pedigree. They proved to be unsound, and not of as high a pedigree as represented; and both died about one year after the purchase, before action brought.

The case came up to the Supreme Court of the United States on appeal from the United States District Court for the Middle District of Alabama, and received the fullest consideration from the ablest counsel and from the Court. It was held that the defendant might plead the failure of consideration against the note in the hands of the assignee, without rescinding the contract or returning or offering to return the property he received under it.

Mr. Justice Daniel delivered the opinion of the Court, and after examining, at great length, the numerous cases cited, both English and American, he says: "We cannot doubt, therefore, after a full examination of the questions on this record, that, under the provisions of the statute of Alabama pleaded in this case, [similar to the Kansas act of 1855, "concerning bonds and notes,"] the plaintiff in error had the right to rely in his defense either upon a fraud practiced on him in the formation of his contract, or on a false or fraudulent warranty, or on a total or partial failure of the consideration on which the contract was entered into by him, or on any payments, discounts or set-offs, in the language of the statute, 'made, had or possessed by him,' provided that the last three grounds of defense shall have come into existence, and been justly belonging to the plaintiff in error, before he had notice of the assignment of his obligation." (*Withers vs. Green,* 9 *Howard* 231.)

It is ordered by the Court that the judgment, entered by the District Court in this cause, be vacated, and that a mandate issue to said Court to overrule the demurrer, and proceed with the cause.