First National Bank of Sturgis v. A. H. Peck, *et al.*

1. NOTE AND MORTGAGE, *but one Contract.* A stipulation in a mortgage that upon failure to pay any part of the moneys secured thereby when due, all shall become due and payable, is valid, and may be taken advantage of by mortgagor as well as mortgagee.

2. CONSIDERATION—*Failure of;* "*Patent Right.*" A note given for a patent that is void, for want of novelty and utility, is without consideration. And in such case there is no need of a re-assignment, or an offer to re-assign.

3. SPECIAL VERDICTS. The facts to be found in a special verdict are the issuable facts presented by the pleadings, and there is no need of greater minuteness in the verdict than in the pleadings.

4. ———— *Code construed.* Sections 285 and 287 of the civil code, and § 286 as amended by § 7 of chapter 87, laws of 1870, relating to verdicts and special findings, considered and construed.

### *Error from Leavenworth District Court.*

A. H. PECK and M. H. PECK made and delivered their three several promissory notes to Almeron Jacobs, and *A. H. Peck* and *Sarah* his wife executed a mortgage to said Jacobs on real property to secure said notes. The notes and mortgage bore date August 20th 1868. On the 2d of October 1869 Jacobs transferred the notes and mortgage to the *First National Bank of Sturgis.* The action was commenced October 31st 1870. The defendants alleged fraud and deceit on the part of Jacobs and one Young in the making of the contract concerning which the notes were given, and a failure of consideration. The case was tried at the May Term 1871. The jury returned a special verdict, the principal findings in which are these: that the consideration for the notes and mortgage was the sale by said Jacobs and Young of the exclusive right to manufacture, vend, and use a patent "petroleum gas stove" in certain territory in Kansas; that to induce the defendants to purchase said patent-right, and with intent to cheat and defraud them, said Jacobs and Young represented to defendant that said stove was a new and useful invention, that it was a valuable improvement, and large sums of money could be made by selling the same in the territory mentioned, and that said stove was safe and harmless, that women and children could use the same without danger; that petroleum fluid or gasoline was the proper fuel to be used therein, and when so used was non-explosive, etc.; that said defendants were ignorant of the use and properties of said stove, and of the dangers of explosion of the petroleum fluid recommended as fuel, and in giving said notes and mortgage relied upon the truth of the statements and recommendations of Jacobs and Young; that said stove was

worthless, and as an invention possessed neither novelty nor utility; that the petroleum fluid when used as a fuel was explosive and dangerous, and endangered the lives of the persons using the same, and of the building or house where used, and emitted a disagreeable odor, and a dangerous gas, etc.; that all the said statements and representations made by Jacobs and Young were false, and that said J. and Y. knew them to be false, etc., and that the consideration for said notes had wholly failed. (These findings are twelve in number, and cover twelve pages, setting out the above facts in minutest detail.) Plaintiff moved to set aside the special verdict, and for a new trial. Motion overruled; and upon the facts found by the jury the court gave judgment against the plaintiff, and in favor of the defendants for costs. Plaintiff brings the case here on error. (No briefs have come to the hands of the reporter.)

*Clough & Wheat*, for plaintiff in error.

*Green & Foster*, for defendants in error.

The opinion of the court was delivered by

BREWER, J.: This was an action brought by the plaintiff upon three notes secured by mortgage. The consideration of these notes was the sale of a patent-right to a petroleum gas stove. The notes at time of suit were not in the hands of the original parties to the contract, but had been transferred by the mortgagee to the plaintiff. The defense was that the purchase of the patent-right had been brought about by the fraudulent representations of the vendor, that the pretended patent was void for want of novelty and utility, that the stove was so dangerous that it could not be used, and was wholly valueless. The first question raised is whether this defense could be interposed between these parties. The notes were due respectively in six, twelve, and eighteen months. They were transferred to the

1. Note and mortgage, but one contract.

plaintiff after the maturity of the second and before the maturity of the third. Of course, when a note is transferred after maturity the indorsee takes it subject to all equities between the original parties and

the same defenses can be interposed to a suit upon it as if brought in the name of the payee and for his benefit. No objection therefore could be raised or is raised to the interposition of such a defense to the first two notes, but it is strenuously insisted that it cannot be considered in reference to the third, and that whatever may have been the consideration the plaintiff being an innocent and *bona fide* holder before maturity is entitled to judgment for the amount thereof and interest. The mortgage was given to secure the payment of the three notes. It was executed cotemporaneously with them. They form one contract and are to be construed together and so as to give force to the terms of each: 2 Pars. on Contr., 15; *Round v. Donnel*, 5 Kas., 56; *Muzzy v. Knight*, supra, 457. It contained this stipulation, that if any part of the money secured by it should not be paid when it became due, then all should immediately become due and payable. There is no contradiction between this and the notes. It might all have been placed in one instrument, and the contract thus set forth would have been consistent and clear. The payor performing this contract would have six, twelve, and eighteen months respectively to make good his several promises, but failing to keep his first promise lost further time to perform the remainder. It was a contract the time of whose performance depended upon certain conditions. This clause is inserted in mortgages usually for the benefit of the mortgagee; but being a valid stipulation the mortgagor has equal right to insist upon it, and receive whatever advantage he can from its enforcement. When the payor at the expiration of six months failed to pay the note then due, by the terms of the contract all three notes became due. The statute of limitations began to run on all, and a subsequent purchaser purchased after maturity. The defendants therefore have a right to interpose any defense in this suit that they could if the original parties to the contract were the sole parties to the suit: 7 Wis., 446; 7 Paige, 180; 27 Eng. Com. Law, 27; 19 Wend., 103.

The defenses as we have seen were fraud in inducing the contract, and a failure of consideration. The sole consideration

was the sale of the patent right. Now in order to support a patent the essential requisites are novelty and utility. And the existence of the essentials is not settled by the issue of "letters patent" from the government. The patent may be *prima facie* evidence, but no party is concluded thereby. He may go behind it and show by any competent testimony the lack of either. If either be wanting the patent is void, and carries nothing to the patentee. Receiving nothing by such instrument, his assignment carries nothing, and a promise in consideration of such assignment is *nudum pactum.* Scott, J., in 21 Mo., 338, says: "The law seems to be that a note given for a patent that is void, by reason of its being useless, is without consideration." See also 11 Gray, 175; 14 Pick., 217; 1 Mason, 182, 302; 4 Mason, 6; Davidson on Patents, 279. The jury found that this supposed invention had neither novelty nor utility, that the use of the stove was attended with danger to person and property, and that the stove was worthless. According to this finding therefore the notes given by defendants were without consideration. And while there was testimony against there was also testimony supporting this finding. A question of fact was fairly presented, and the decision of the jury thereon ought not to be disturbed in this court.

*2. Fraud: misrepresentation; failure of consideration;*

It is claimed by counsel for plaintiff that defendants should within a reasonable time have given notice of their intention to rescind the contract, and have re-assigned, or offered to re-assign the patent right. Many authorities are cited on the question of rescission, but they do not apply here. Here is no rescission of a contract, but *no contract.* A contract implies a consideration. The jury say there was no consideration, therefore no contract. Of what avail would be a re-assignment? Nothing passed; what would be reassigned? In 23 Pick., 286, Morton, J., says: "The only exception is where the property is entirely worthless to both parties. In such case the return would be a useless ceremony," which the law never gives. In *Blood v. Northrup & Chick,* 1 Kas., 40, this court used this language: "But it is

*—— offer to rescind contract.*

further objected that, by interposing the plea of failure of consideration to the plaintiff's demand, the defendant is in effect seeking to rescind the original contract without restoring what he has received under it, namely, the forged draft. The objection is not valid. The defendant is not seeking to rescind his contract. In such a case it is not necessary that he should restore or offer to restore." See also 22 Pick., 510; 7 Foster, 412; 9 How., 213; 12 Conn., 238.

In this case a special verdict was returned at the instance of the plaintiff. Objection was made to the verdict on the ground that it did not state all the facts established by the evidence. Special verdicts and findings upon particular questions of fact are by the laws of 1870 matters of right. Laws 1870, p. 173, § 7. It is no longer discretionary with the court to require them or not. Under these circumstances it becomes important to determine the scope of a special verdict as fixed by our statute. Considerable difference of opinion has existed in reference to it, and a judicial construction in this court will doubtless be of service in many cases. What is a special verdict? Under our statute the jury can be called upon to respond in three ways—by a general verdict, by a special verdict, and by returning answers to particular questions of fact. True, this latter mode of interrogating the jury can be resorted to only in conjunction with the first, but it is nevertheless a distinct mode. A general verdict embraces both the law and the facts. It states the result of the whole controversy. It determines the ultimate rights of the parties. It combines the decisions of the court with the opinions of the jury. True, the jury receive the law in the instructions of the court, but they apply the law to the facts, and, having combined the two, declare the result. So that under such a verdict they really perform two functions, that of finding the facts, and then that of applying the law to those facts. Any one at all familiar with the experiences of a court-room is aware that the errors of the jury result oftener from their misapplication of the law as stated, to the facts, than from their misapprehension of the facts. A special verdict, on the other hand, finds

*3. Special verdicts; Statutes construed.*

42—8TH KAS.

only the facts, and leaves to the court the duty both of determining the law and of applying it to the facts. It is thus defined in § 285 of the code of civil procedure, Gen. Stat., 684: "A special verdict is that by which the jury finds facts only. It must present the facts as established by the evidence, and not the evidence to prove them." It was decided in 1 Miles, 26, that "if instead of finding facts the special verdict sets out the evidence, a new trial will be granted." Whether that be the necessary result or no, it is clear that a special verdict should not be a recital of testimony, but a finding of certain facts as established by such testimony. But what facts? How minutely may they, must they, be subdivided? The facts stated in the pleadings; as minutely, and no more so in the special verdict, than in the petition, answer, and reply. The special verdict must conform to the pleadings. The word "facts" is used in this section in the same sense, and refers to the same things as when used in § 87 of the code, which declares that a "petition must contain a statement of the *facts* constituting the cause of action, in ordinary and concise language without repetition." There are in every cause of action certain essential substantive facts, certain elements, so to speak. Every pleader knows this when he prepares a petition. The omission of any one of these elements renders the petition defective. The failure to prove one defeats the cause of action. Now these essential elemental facts are the ones the special verdict must find, no more, no less. A history of the case in the nature of a recital of the testimony, or a detail of the various steps in the transaction is not the function of a special verdict. It responds to the various facts of the petition like a special denial, touching each separately. The statute clearly points to this construction. It says, (Laws 1870, p. 173, ch. 87, § 7, amending § 286 of the code,) "the court shall direct the jury to find a special verdict in writing upon all or any of the issues in the case." The *issues* are to be passed upon in the special verdict. In Bacon's Abridgement, vol. 10, p. 313, it is said, citing as authority *United States v. Bright*, Bright's Trial, 199, "If in a special verdict the jury find the issue, all they find beyond is

surplusage." The special verdict is simply the response of the jury separately to the several issues presented by the pleadings. If this be true, how can a special verdict be returned upon less than all the issues, as seems to be contemplated by the statute? A special verdict is returned at the request of a party. If such party desired a special verdict upon one issue, or any number less than all, he thereby concedes all other issues to his adversary. He rests his case upon the issues he desires submitted. It was a common practice in the English courts for a jury to return a verdict like this: If so and so be the law, plaintiff is entitled to judgment; otherwise, the defendant. It was called a special verdict. It presented a single question. So the court often submitted a single issue of fact. This also was called a special verdict. Again, it may be urged that there are frequently allegations in pleadings which combine conclusions of law with statements of fact, and that upon denial issues are presented which equally mingle law and fact. Yet, if they are sufficient under that section which requires the petition to contain a statement of the facts, why not equally sufficient under that which requires a special verdict to find facts? Again, it may be urged that to prevent wrong it is often necessary to go back of the issuable facts and ascertain the truth in regard to some item of testimony. For instance, a matter in dispute might be whether a party accepted certain work under a contract. The general allegation would be that he accepted. The special verdict following it might be that he accepted. Yet, if what he *actually did* was found, the law would say that there was no acceptance. And as truth is the object of all investigation, that which he did ought in some way to be ascertained and presented. In other words, we must go back of the issues to the testimony or those subdivided facts and circumstances which combine to make the general facts alleged. This it is claimed is the scope and purpose of a special verdict, and construing the statute as we have simply emasculates it. It is shorn of its strength, and a special becomes of but little more advantage than a general verdict. It applies the law to the facts with but little greater exactness. We concede the neces-

sity for such procedure, and think provision is made for it by another clause of the statute. After the provision for a special verdict, the statute (ch. 87, § 7, laws of 1870, *supra*,) reads— "And upon like request to instruct the jury if they shall render a general verdict to find upon particular questions of fact, to be stated in writing, and shall direct a written finding thereon." Under this clause full scope is given for ascertaining any fact in the case which may affect its determination, whether one of the main essential facts, or any minute subdivision thereof. And in order to give full force to these findings the next section of the code (§ 287,) provides that " when the special finding of facts is inconsistent with the general verdict, the former controls the latter, and the court may give judgment accordingly."

Examining the verdict returned in this case in the light of this construction of the statute, and it seems to us it contains a finding upon all the issues. It is more full, and subdivides more than is necessary, but it is sufficient. A great many other questions are presented in the petition in error, and the briefs of counsel, but determining these as we have done avoids the necessity of any inquiry into those. There being no consideration for the notes the defendants were entitled to verdict and judgment, and any errors, if errors there were, in the other matters complained of may be considered as not affecting the substantial rights of the plaintiff. The judgment will be affirmed.

All the Justices concurring.