---

(Lucas County Common Pleas.)
November 28, 1898.
HENRY W. WILHELM v. ELLA L. LOOP.

---

(1). A party transferring a promissory note and endorsing the same without recourse, warrants the genuineness of the signature to the note.

(2). Where the note purports to be signed by two joint makers, and one of the signatures proved to be a forgery and the other signer was insolvent, the endorser, although his endorsement made without recourse, was still liable by virtue of his implied warranty of the genuineness of the signatures.

(3). Where collateral security was transferred with the note, it is not necessary, in order to enforce this liability, that the holder should surrender such collateral or otherwise rescind. He might enforce both until full payment of the note.

---

Demurrer to amended and supplemental petition.

PRATT, J.

This is a matter which has given me a good deal of trouble; it is a demurrer to an amended and supplemental petition, the petition of Henry W. Wilhelm against Ella L. Loop. The action is brought to recover a judgment against the defendant, Loop, upon a promissory note purporting to be made by Lyman Rowe and Lewis Rowe, and endorsed to the plaintiff by defendant, Ella L. Loop, without recourse. And the allegation upon which the right to recover is based as stated in the petition, is as follows:

"Plaintiff says that said note purports to be signed by Lewis Rowe as one of the joint makers thereof, where-as in truth and in fact said signature on the face of said note was not made by said Lewis Rowe, and was and is forged, and by reason thereof said note is wholly worthless and of no value, the said Lyman Rowe, the other maker thereof being now deceased and his estate is insolvent."

A copy of the note is attached to the petition, and it shows—briefly stated—that when the note was made, Lyman Rowe, the actual maker of the note and who has since died, secured the payment of the note by certain stocks as collateral with power to sell upon notice to him. That since his death his administrator has, under order of the probate court, sold the stock at public sale; that it was bid in by the plaintiff for a certain sum, which is endorsed on the note, and suit is brought here for the balance.

Aside from the questions made growing out of the collaterals, the liability of the defendant is fully established by the case cited: Dumont v. Williamson, 18 Ohio St., 516, and as to this it is only necessary to give the syllabus:

"2. The vendor of a promissory note who transfers it by endorsement, impliedly warrants that the signatures of the prior parties whose names appear thereon are genuine, notwithstanding the indorsement is express to be without recourse on him."

It is unnecessary to consider that case further than to say that, independent of this question of collateral security, it is a complete decision and one that has been quoted here frequently, and has been acted upon in this court to my certain knowledge, in holding a party liable although he would not otherwise have been liable. But counsel for defendant submits that the petition does not state a case, and cites from Daniel on Negotiable Instruments, as follows:

"Where a party has paid money for or upon a forged instrument, and some parties to it are genuine, he must in a reasonable time after discovering the forgery offer to return the paper, so as to enable the party responsible to him to make the best of it he can; where the paper is an utter forgery

with no genuine party to it but the transferer, this would be an idle ceremony, and in such cases only the consideration paid may be recovered without doing so." 2 Daniel on Negotiable Instruments, section 1372a.

And reference is also made to the cases which are cited by Daniel in support of this proposition, and it is claimed that on the ascertainment of the forgery of this note—these collateral securities not having been tendered back, that the plaintiff's action is entirely defeated, thus raising a question that goes to the entire merits of the case.

There was here a genuine maker; and although dead and his estate insolvent, it is claimed that as a rule of law the plaintiff must rescind, and, in order to do so, must return the note and security to Loop, the indorser, guarantor, transferer or seller, whatever you have a mind to call it. There is no doubt in my mind that, if this is the only remedy—that is, to rescind —that he must rescind in whole; he cannot rescind in part and retain in part; but the question is, is that the only remedy which the plaintiff has?

In order to get an idea of this, I have been through all the cases cited by counsel and those cited by Mr. Daniel in his work: 125 Mass., 168; 8 Kan., 660; 19 Kan., 332; 105 Mass., 551; 1 Metcalf, 547.

In the 125 Massachusetts the syllabus of the case does not seem to be in point. On page 70 there is something that will come a little nearer to it. This was a case of the purchase of counterfeit bonds of the United States.

The court says in the opinion:

"It is first contended that this action cannot be maintained without returning the counterfeit bonds to the defendant. It has been settled in this commonwealth that the return of a counterfeit bank note is not essential to the maintenance of an action against the party from whom it was received; that it is entirely worthless, and an offer to return it would be an idle ceremony."

Then are cited a number of cases, among which is Coolidge v. Brigham, 1 Metcalf, 547, which he says is—"re-

lied on by the defendant". "The promissory note was not worthless, for, while the endorsements upon it were forged, the signature of the maker was genuine; and in Bassett v Brown, 105 Mass., 551, 557, the stock, although it had little or no market value, was genuine, and it was not shown that the defendant might not have derived some benefit from the shares, if returned at the proper time." That is the part referred to, I suppose, by Mr. Daniel as supporting the text.

The case in 8 Kansas, 660, is an action of fraud upon a fraudulent and worthless patent right; and although it has been relied upon in argument specially, it seems to me to be wide of the mark in this case. It does state a principle, which is unquestioned, at page 665, in the opinion of the court, (which is entitled of course to special regard from the fact that it is delivered by Judge Brewer, now one of the justices of the supreme court of the United States) where it says:

"The defendant is not seeking to rescind his contract. In such a case it is not necessary that he should restore or offer to restore".

That is, where he is not seeking to rescind.

There is a case in 19 Kansas, 330, and the syllabus of the case is:

"2. Return of forged papers not necessary. An action can be maintained for the money paid for such forged bonds by the vendee against the vendor, without a return or an offer to return to the vendor the worthless papers.".

There is one of these cases, 105 Mass., 551, which perhaps I should refer to, and this is the second paragraph in the syllabus:

"On the issue whether certificates of stock in a corporation given by the grantee as the consideration of a deed of land to him, voidable for his fraud, are absolutely valueless, and their return is not necessary as a condition of the avoidance, it is not sufficient that they have no intrinsic value and no market value, if they are capable of serving any purpose of advantage by their possession or control, or if

their loss is a disadvantage to him in any way."

If he is required to rescind, he must place the party in the position that he would otherwise have been.

This case in 1 Metcalf is an old case, and some of these cases that are old are nevertheless authority in these modern times. This case was where a note had been given for goods sold.

"A. agreed to procure and deliver to B. the note of W., indorsed by two other persons, and afterwards wrote to B. this letter—'I enclose you the note of W's, as proposed, which you will please pass to my credit.' Held, that this was tantamount to a warranty that the indorsements on the note enclosed in the letter were genuine."

This, perhaps, is one of the foundation cases on which the case in 18 Ohio St., is decided. and I may say, without going through these cases, that the principle upon which the right to recover is based is, that of a guaranty, or warranty, of the genuineness of the note, and is based upon the same principle exactly as the transfer or sale of personal property—the guaranty that the thing is what it purports to be—the general principle of guaranty that he was giving him a genuine note, and not a forged one. It is, however, the principle of guaranty or warranty that the right of action seems to me to be based on. Indeed there may be a right to rescind where there is a fraud and based on that, or a fraudulent warranty, if it comes within that designation, but whether the party is bound to rescind, or whether he may rely upon the warranty, that is affirm the contract and recover damages? In this old case in 1 Metcalf, (553) the court—perhaps a little outside of the case—says this:

"The plaintiff was at liberty either to restore the note to the defendant, or to retain it and resort to his action on the warranty. In the latter case the measure of damages will be the difference between the amount of the note and its actual value, whatever that may be."

Now, with all due deference to Mr. Daniel, it seems to me that this con-stitutes the true principle if this is a warranty, and so all the books state it from the beginning as being a warranty; and if it is a warranty, while a party might have a right to rescind, still it seems to me that he is not required to rescind.

Now then, apply this principle to this case. You will note that in no one of the cases cited here by Mr. Daniel, or that is cited in argument, is a case where there is a collateral which is of value. They are not in point so far as that is concerned; and the question here raised, looking at it as a fair, straight question is: was the plaintiff here required, having this stock as collateral—was he required before he could hold the party from whom he took the note liable, to return that which he had? He might be in serious doubt perhaps as to whether the security which he had, or the obligation that he was thus to make binding, as to which was the better security. There might be doubt about his ability to collect his judgment if he had one, and it seems to me that he ought not to be put to the election to turn back and deliver over the security that he had in order to be able to get the security that he was entitled to by reason of a guaranty made by this endorser at the time of making the contract. Of course, if there were direct authority that he was required to do this, the court might be required to so hold. But in the absence of any direct authority, it seems to me that it is contrary to justice and to business principles to require this; and not having any direct authority, notwithstanding I am in serious doubt upon the subject, I hold it as my better opinion that he is not required to rescind, but may rely upon the warranty.

Now, in all this I have not considered, and I do not think it is within my province now to consider as to the disposition made of this collateral. The question is here and now whether the plaintiff was required to surrender it to Ella L. Loop? The questions have been discussed before me pro and con as to the effect of his making a sale and making the in-

dorsement, but that is nct here, that is a matter which will come up on the defense. If he has a right to hold that stock, the question of what he did with it should be raised by answer, and for that reason the demurrer to the petiticn will be overruled.

Defendants excepted.

W. H. Tucker, for Plaintiff.

King & Tracy, for Defendant.