W. E. SNYDER V. CHARLES N. MILLER *et al.*

No. 14,102. (80 Pac. 970.)

SYLLABUS BY THE COURT.

1. MORTGAGES—*Default—Limitation—Suspension—Estoppel.* A mortgage securing a series of notes due at intervals of one year provided that non-payment of any one of them together with non-payment of taxes due on the mortgaged premises should mature the entire debt. None of the notes was paid at maturity. At the date of the maturity of the first note taxes on the land were due and unpaid, and such default continued until after all the notes were due. A purchaser of the land from the mortgagor, who did not assume payment of the mortgage, then paid the taxes. Subsequently to the payment of the taxes, and more than five years from the date of the default upon the first note and taxes, the mortgagee brought suit to foreclose the mortgage. *Held:* (*a*) The statute of limitations commenced to run at the date of the default upon the first note, and taxes; (*b*) the running of the statute of limitations was not suspended by the payment of taxes; (*c*) by paying the taxes the landowner did not waive the right to plead the statute of limitations, or estop himself from so doing.

2. —— *Cases Followed, and Criticized.* The case of *National Bank v. Peck*, 8 Kan. 660, approved and followed, and the case of *Douthitt v. Farrell*, 60 Kan. 195, 56 Pac. 9, criticized.

Error from Ottawa district court; F. D. BOYCE, judge *pro tem.* Opinion filed May 6, 1905. Affirmed.

*Garver & Larimer,* and *E. C. Sweet,* for plaintiff in error.

*Thompson & King* for defendants in error.

The opinion of the court was delivered by

BURCH, J.: This proceeding in error grows out of a suit commenced in the district court of Ottawa county on December 12, 1903. The petition prayed for the foreclosure of a mortgage securing four promissory notes due, respectively, on February 18, 1896, February 18, 1897, February 18, 1898, and February

18, 1899.  The mortgage contained a provision to the effect that if any one of the notes secured and the taxes upon the mortgaged premises should not be paid when due and payable the entire mortgage debt should at once mature.  The absence of the makers of the notes from the state was pleaded to avoid the running of the statute of limitations.

The answer pleaded default in the payment of taxes for the year 1895, resulting in a tax sale of the land in 1896, followed by an indorsement on the tax-sale certificate of taxes paid by the certificate-holder for the years 1896, 1897, and 1898.  The defendant purchased the land subject to the mortgage on November 18, 1897, and was not charged with any personal liability on the notes.  Because of the default in the payment of the taxes for the year 1895, and the default in the payment of the note due February 18, 1896, he claimed the entire mortgage debt matured on the date last mentioned, and prayed the benefit of the statute of limitations.

The reply pleaded payment of the delinquent taxes by the defendant on August 21, 1899.  A demurrer to the reply was sustained, and the correctness of this ruling is the matter now in question.

As long ago as 1871 this court decided that a stipulation in a mortgage of the same character as that under consideration was not a one-sided affair, vesting a mere option in the mortgagee, but that the mortgagor had an equal right with the mortgagee to insist upon it and to receive whatever advantages it might confer upon him.  Mr. Justice Brewer, speaking for the court, said:

"This clause is inserted in mortgages usually for the benefit of the mortgagee; but being a valid stipulation the mortgagor has equal right to insist upon it, and receive whatever advantage he can from its enforcement.  When the payor at the expiration of six months failed to pay the note then due, by the

terms of the contract all three notes became due. The statute of limitations began to run on all, and a subsequent purchaser purchased after maturity." (*National Bank v. Peck*, 8 Kan. 660, 663.)

The same rule was announced in England at least as early at 1843. A defendant gave a warrant of attorney to secure a debt payable by instalments, the plaintiff having the right in case of any default to have judgment and execution for the whole as if all the periods for payment had expired. In an action of assumpsit it was held that the defendant might show, under a plea of the statute of limitations, that the first default was made more than six years before the action, and that this was a complete defense, not only as to instalments due more than six years before but also as to those due within that period. Lord Denman, C. J., said:

"We are of the opinion that the defendant is right, and that the cause of action accrued upon the first default for all that then remained owing of the whole debt. . . .

"In this case there was a default more than six years ago; and upon that the plaintiff might, if he pleased, have signed judgment and issued execution for all that remained due, or he might have maintained his action. If he chose to wait till all the instalments became due, no doubt he might do so; but that which was optional on the part of the plaintiff *would not affect the right of the defendant, who might well consider the action as accruing from the time the plaintiff had a right to maintain it.* The statute of limitations runs from the time the plaintiff might have brought his action, unless he was subject to any of the disabilities specified in the statute; and as the plaintiff might have brought his action upon the first default, if he did not choose to enter up judgment, we think that the defendant is entitled to the verdict upon the plea of the statute of limitations." (*Hemp v. Garland*, 4 Q. B. D. [1843] 519, 523, 524.)

This case was expressly approved in 1891 by the court of appeals, on appeal from the, queen's bench

division, in the case of *Reeves v. Butcher,* 2 Q. B. D. (1891) 509, 511. Lindley, L. J., said:

"I am of the opinion that we cannot differ from the judgment below without altering the law. The agreement is one reasonably easy to be understood. It provides for a loan for five years, subject to a provision that if default is made in punctual payment of interest the principal shall be recoverable at once. Now, the statute of limitations (21 Jac. 1, c. 16) enacts that such actions as therein mentioned, including 'all actions of debt grounded upon any lending or contract without specialty,' shall be brought 'within six years next after the cause of such action or suit, and not after.' This expression, 'cause of action,' has been repeatedly the subject of decision, and it has been held, particularly in *Hemp v. Garland,* decided in 1843, that the cause of action arises at the time when the debt could first have been recovered by action. The right to bring an action may arise on various events; but it has always been held that the statute runs from the earliest time at which an action could be brought."

The reason for allowing the debtor to take advantage of the stipulation was well stated by the supreme court of Texas in the case of *Harrison Machine Works v. Reigor,* 64 Tex. 89, as follows:

"The purpose of statutes of limitation is 'to compel the settlement of claims within a reasonable period after their origin, and while the evidence upon which their enforcement or resistance rests is yet fresh in the minds of the parties or their witnesses.' (Wood, Lim. §5.)

"If the holder of a note may, at his option, treat the claim as due at a later date than the maker has agreed that it shall mature, and thus prescribe a different date at which it shall be barred, the evidence for its enforcement may be preserved, whilst that for its resistance may be destroyed, and thus the purpose of the statute be wholly defeated. . . .

"Here no option was left to the creditor; he was forced to treat the debt as due. It is true he was not obliged to bring suit upon it upon default in payment of the first note; neither is any creditor compelled to sue upon a claim so soon as it becomes due. But the

statute was put in motion without consulting his wishes, by the very terms of the contract, which neither party had any right to change without the consent of the other." (Pages 90, 91.)

So in *Noell v. Gaines,* 68 Mo. 649, 656, it was said:

"It cannot, with any show of reason, be urged that the notes could, under the terms of the contract, fall due for one purpose, and not for another. If they fell due when the contingency happened, and because it happened, and because the parties upon valid consideration had thus contracted, it must needs follow that the face of the notes under the circumstances mentioned ceased to furnish any guide as to their maturity."

The benefit to be derived by sureties from a contract providing that non-payment of a part of the debt shall mature the whole was forcefully stated by the Kentucky court of appeals as follows:

"It is easy to conceive that a surety might require such a clause as a condition for his own protection. He might be unwilling to bind himself for five years unconditionally, whereby he might be compelled to pay, at the end of that time, both the principal and interest, and might very prudently say: 'Insert a clause which requires the interest to be paid quarterly, and which provides that, if not so paid, the debt is to become due, so that, if not paid, I will have the right to pay it or secure myself.'" (*Ryan v. Caldwell,* 106 Ky. 543, 545, 50 S. W. 966, 967.)

The reasoning of these cases applies with peculiar force to the situation of one who has purchased subject to a mortgage that he has not assumed, and especially so if the mortgagors have left the state and he may be deprived of their aid in making proper defenses to a belated claim. When on the United States circuit bench Mr. Justice Brewer said:

"Now, here, according to the averments of this petition, this mortgage and this deed of trust were executed at the same time, and to secure these notes; they were parts and parcels of one transaction, and are to

be construed as one instrument; and if there were but one instrument, and that containing a promise to pay money at three separate times, with a proviso that, upon a failure to pay the first sum at the time named, all should become due, I cannot see how, logically, we can escape the conclusion that the parties have made an absolute, unconditional stipulation, operative under all circumstances and for all purposes. I had occasion when I was on the supreme bench of my own state to consider this matter in two or three cases, and that was the conclusion I then came to, and it is unchanged. I am aware that Judge Hough in his dissenting opinion suggests certain contingencies in which the application of this rule, where there are several negotiable promissory notes secured by mortgages or deeds of trust, might work out some embarrassments; but still I do not think that the possibility of such embarrassments can avoid the clear force of the language the parties have used. I do not see why they cannot make such a contract; and if they make it, and its language is clear, I do not see why the courts should not give force and effect to it." (*Wheeler & Wilson Manufg. Co. v. Howard,* 28 Fed. [C. C.] 741.)

Although the courts of some of the states and some of the federal courts have taken a different view, the doctrine propounded in *National Bank v. Peck, supra,* has been steadily adhered to by this court. It has been carried to the extent of holding that a tender of delinquent taxes, the non-payment of which constituted the sole breach of the contract, and the payment of all accrued costs, would not, after suit had been commenced, discharge the default and reinstate the contract as to notes otherwise not due for a long period of time. (*Stanclift v. Norton,* 11 Kan. 218.) The legislature has not seen fit to interfere, and the rule thus early announced is now definitely established as a part of the law of this state. (*Darrow v. Scullin,* 19 Kan. 57; *Meyer v. Graeber,* 19 id. 165; *Elwood v. Wolcott,* 32 id. 526, 4 Pac. 1056; *Lewis v. Lewis,* 58 id. 563, 50 Pac. 454; *Douthitt v. Farrell,* 60 id. 195, 56 Pac. 9; *Kennedy v. Gibson,* 68 id. 612, 75 Pac. 1044.)

At a date earlier than that of the decision in *National Bank v. Peck, supra,* this court held:

"As a general rule, when a statute begins to run, it continues to run until the demand is barred. This principle is laid down with great uniformity in all the authorities, and may be considered as settled. Undoubtedly the legislature may prescribe differently, and in this state several exceptions are made, but none such as is claimed in this case." (*Green v. Goble,* 7 Kan. 297, 301.)

By applying the rules recognized in these cases to the facts of the case under consideration it becomes plain that the demurrer to the reply was properly sustained; but the defendant claims that the court should have been guided by the case of *Douthitt v. Farrell,* 60 Kan. 195, 56 Pac. 9, the syllabus of which reads as follows:

"Where a promissory note was given, by the terms of which the principal became due in five years from date, with interest payable semiannually, and a real-estate mortgage securing it was given, which provided that upon default in payment of any of the interest when due and the taxes on the mortgaged premises when due the whole indebtedness should mature, and both such defaults occurred, and the statute of limitations thereupon commenced to run against the indebtedness, but the delinquent taxes were thereafter paid by the mortgage debtor, *held,* that the running of the statute in his favor was ended by his voluntary correction of the one default, and, although more than five years elapsed from the occurrence of the two defaults mentioned, the cause of action on the note and mortgage was not barred."

This decision was based upon the case of *Smalley v. Renken,* 85 Iowa, 612, 616, 52 N. W. 507. *Smalley v. Renken* refers, in turn, to *Watts v. Creighton,* 85 Iowa, 154, 52 N. W. 12, and *Watts v. Creighton* discusses and expressly rejects the doctrine of *National Bank v. Peck, supra.* The argument in the Smalley case was as follows:

"What did the parties stipulate that the taxes should

be paid by defendant for?  To protect the plaintiff from the loss or impairment of his security.  At the filing of the amendment every right of the plaintiff in this respect was fully protected.  The object of the condition of the mortgage was to enable the plaintiff to treat the debt as due, and save himself from loss because of the default.  After the payment of the taxes, all such liability for loss was at an end.  His situation was exactly as if there had been no default as far as the conditions for forfeiture were concerned. To justify a forfeiture under such circumstances would work an injustice that the court ought not to permit."  (Page 616.)

This reasoning proceeds upon premises wholly incompatible with those employed in the decisions of this court already quoted and cited.  Stipulations for the acceleration of the maturity of debts do not provide penalties or forfeitures.

"It is therefore settled by the overwhelming weight of authority that if a certain sum is due and secured by a bond, or bond and mortgage, or other form of obligation, and is made payable at some future day specified, with interest thereon made payable during the interval at fixed times, annually, or semiannually, or monthly, and a further stipulation provides that in case default should occur in the prompt payment of any such portion of interest at the time agreed upon, then the entire principal sum of the debt should at once become payable, and payment thereof could be enforced by the creditor, such a stipulation is not in the nature of a penalty, but will be sustained in equity as well as at law.  In exactly the same manner, if a certain sum is due and is secured by any form of instrument, and is made payable in specified instalments, with interest, at fixed successive days in the future, and a further stipulation provides that in case of a default in the prompt payment of any such instalment in whole or in part at the time prescribed therefor, then the whole principal sum of the debt should at once become payable, and payment thereof could be enforced by the creditor, such stipulation has nothing in common with a penalty, and is as valid and opera-

27—71 KAN.

tive in equity as at law." (1 Pom. Eq. Jur., 2d ed., §439.)

"Provisions such as that under consideration are not in the nature of penalties, nor have they anything in common with forfeitures, but are to be regarded as nothing more than agreements between the parties, fixing the time and the conditions upon which the whole debt may become due. Such an agreement may be as advantageous to the payor as to the payee. *Buchanan et al. v. Berkshire L. Ins. Co.*, 96 Ind. 510; *Malcolm v. Allen*, 49 N. Y. 448; 1 Pom. Eq. Jur. §439; 2 Jones, Mort. §1186." (*Moore v. Sargent*, 112 Ind. 484, 485, 14 N. E. 466.)

Indeed, the supreme court of Iowa itself in a later case has expressly held that such stipulations are not to be regarded as providing for penalties or forfeitures. (*Swearingen v. Lahner and Platt*, 93 Iowa, 147, 61 N. W. 431, 26 L. R. A. 765, 57 Am. St. Rep. 261.)

But a more fundamental consideration is that the parties made the contract and the courts cannot make another to take its place. Its language excludes the idea that the creditor may or may not "treat the debt as due." It becomes due in fact. If an election were all that the parties intended words appropriate to that purpose should have been used.

"It is not necessary to assume that the parties to such a contract intended to provide for none but wrongful refusals to pay instalments. It might happen that the debtor upon good grounds would afterward deny his liability upon the contract and therefore refuse to pay instalments, in which case the provision would serve him a useful purpose in bringing the question at issue to a prompt test and not leave it entirely with the creditor to delay until perhaps evidence of the defense had been lost. The question at last is one of construction of the language used, and that which makes it mean just what it says is not without reason or good authority to support it. Where the purpose is only to give the option to the creditor, language expressive of it may be easily inserted." (*Building and Loan Assn. v. Stewart*, 94 Tex. 441, 61 S. W. 386, 86 Am. St. Rep. 864, 868.)

This distinction was recognized, and indeed controlled the decision, in the very recent case of *Kennedy v. Gibson,* 68 Kan. 612, 616, 75 Pac. 1044. The opinion reads:

"The note provided that a default should mature the entire debt, at the option of the holder, while the provision in the mortgage was that a default made the whole debt due, regardless of an election by the holder. Which of these provisions should control? In the absence of an option clause in the note, the stipulation in the mortgage would have operated to mature the whole debt upon a default, and the mortgagors could have taken advantage of the stipulation. (*National Bank v. Peck,* 8 Kan. 660.) The stipulation in the note as to default, however, conflicts with that of the mortgage, and, of necessity, the former controls. The note contains the obligations of the mortgagors, and the mortgage, concurrently executed, is an incident to and security for the note. The stipulation in the note must therefore prevail, and unless the holder exercised the option and elected to declare the whole debt due, the statute would not run earlier than the time originally fixed for the maturity of the note."

Such being the established position of this court, the Smalley case must be eliminated as a support for the conclusion reached in *Douthitt v. Farrell, supra.*

In deciding the Douthitt case the court in effect declared reciprocal estoppels against the parties. The debtor lost the right to plead that the statute was running on account of his default, and the creditor lost the right to sue on account of the same default. The wound was healed without a scar. The condition in the mortgage that the creditor could, under certain circumstances, insist upon payment of the note before maturity according to its terms was restored to the status of an unbroken covenant for the future protection of the indebtedness secured, and the indebtedness itself was restored to the status of an unmatured claim. The opinion reads:

"We have no doubt but that the voluntary payment of the taxes by the debtor was a waiver by him of

the conditions under which the statute of limitations was running in his favor *and was a restoration by him of the plaintiff to the status of a holder of an unmatured indebtedness.*"    (Page 198.)

Manifestly no such rehabilitation of rights could be accomplished in this case.    The last note had matured by its own terms six months before the taxes were paid.    The plaintiff could not be reinvested with the rights of a holder of an unmatured indebtedness, and the mutual modification of the legal relations of the parties adverted to in the Douthitt case was impossible.    True, the term "voluntary waiver" is used in that decision, but as already observed the waiver was of such a character that it necessarily worked a change in the rights of the opposite party.

That the conduct of a single party to the contract may have such a far-reaching effect, unless the other party has been influenced in some manner by it, is not conceded by those courts that enforce the rule of peremptory maturity adopted in this state.    Thus in the case of *Building and Loan Assn. v. Stewart, supra,* it was said:

"It is not in the power of the creditor by his acts alone to change the rights of the parties resulting from the maturity of the debt.    But both parties, by their joint action, may so alter such rights that the creditor would no longer have the right to demand nor the debtor to pay the entire indebtedness.    .    .    . While neither party by his separate action or nonaction could impair the rights of the other, each could waive his own rights as they accrued from the default in payment of an instalment so as to estop him from relying upon such default.    To accomplish this, it would only be necessary that each should so act as to justify the other in believing and acting upon the belief that the effect of the failure to pay an instalment was to be disregarded and that the contract should stand as if there had been no default."    (Page 447.)

Likewise, in the case of *Moore v. Sargeant, supra,* it was said:

"The provision in the mortgage for accelerating the

Snyder v. Miller.

time when the whole debt should become due and collectable did not make the maturity of the debt evidenced by the second note depend upon the election of the mortgagee. The second note became absolutely due upon failure to pay the first note at maturity. According to the terms of the contract, upon the happening of that event, the whole debt became as effectually and absolutely due as if further credit had not been, in any contingency, agreed upon. The mortgagor had then the right to pay or tender the whole debt, and by that means suspend the accumulation of interest. The acceptance of a part by the mortgagee did not defeat the right of the mortgagor to pay or tender the balance at once, nor did it, without a new agreement, extend the time or prevent the former from enforcing payment of what remained unpaid. . . . Under a provision which gives the creditor the exclusive right to elect, within a time fixed, whether or not he will treat the whole debt as due in case the debtor makes default in paying interest, it may well be that the unconditional acceptance of interest by the creditor, after the expiration of the time, without notice of the election, would waive the default. (2 Jones, Mort. § 1186.) Or if the default was induced by the fraudulent or inequitable conduct of the creditor, or by any agreement or promise upon which the debtor might rely which operated to mislead or throw the debtor off his guard, a court of equity would interfere to stay proceedings, or the action might be abated upon the facts being properly pleaded." (Page 485.)

Under either theory the judgment of the district court in this case was correct because the condition in the mortgage now in controversy had spent its force when the taxes were paid. No acceleration of the maturity of the notes secured could occur by virtue of it; failure to comply with it could not start the running of the statute, and a payment of taxes could not stop the statute from running. No rights could be gained or lost on account of the stipulation.

On February 18, 1896, a cause of action accrued in plaintiff's favor, and the statute of limitations then commenced to run against it. From February 18,

1896, until the notes matured by their terms the plaintiff had an indisputable right to bring suit upon them, and during all that time the statute of limitations continued to run. After the notes matured by their terms the cause of action continued to exist unimpaired, and the statute continued to run. The payment of taxes on August 21, 1899, could not prevent suit on the notes, and hence could not suspend the operation of the statute, and it continued to run after that date as before. Such having been the condition of affairs for more than five years before suit was commenced, the right to recovery was then barred. The taxes were paid by one who bore no privity to the debt, and owed the mortgagee no duty concerning it. His conduct implied no recognition either of the existence of the notes or of the right to enforce them. It was entirely independent of, and unrelated to, any cause of action the plaintiff might have. It had, and could have, no effect whatever upon the conduct or rights of the mortgagee, and waiver cannot be predicated upon it.

The judgment of the district court is affirmed.

All the Justices concurring.