(No. 2070, January 7, 1918.)

## BUSS v. KEMP LUMBER CO.

### SYLLABUS BY THE COURT.

1. The statute of limitations commences to run against a cause of action on a note upon default of payment of interest, where the note provides that "in case of a default in the payment of any interest payment, then the whole principal sum shall become due and collectable."  P. 570

2. A judgment creditor, having a general lien upon the property of the mortgagor, may plead the statute of limitations against the cause of action of the mortgagee on a note and mortgage.  P. 571

3. Possession of mortgaged land by mortgagee, with consent of mortgagor, does not toll the statute of limitations. No such exception is provided by statute, and the court will not create an exception not provided by law.  P. 574

Hanna, C. J., dissenting in part.

Appeal from District Court, Eddy County; Richardson, Judge.

Suit by George H. Buss against the Kemp Lumber Company, John H. Fox, and another. Judgment for plaintiff, and the Kemp Lumber Company appeals. Reversed, with directions to overrule the demurrer to appellant's answer,

R. C. Reid, of Roswell, for appellant.

Contract is clear and requires no special construction. Daniels on Negotiable Instruments (Calvert Ed.) 1215; Angell on Limitations 6th Ed. 103; Douthitt v Farrell, 60 Kan. 196, 56 Pac. 9; Manitoba Mortg. & Investment Co. v. Dally, 10 Man. L. Rep. 425; Dodge v. Signor, 18 Tex. Civ. App. 45, 44 S. W. 926; San Antonio Real Estate etc. v. Stewart, 61 S. W. 386; McFadden v. Branden, 8 Ont. L. Rep. 610; Spesard v. Spesard, 88 Pac. 576 (Kan.); Snyder v. Miller, 80 Pac. 570 (Kan.); Reeves v. Hutcher, 2 Q. B. 509; Bank v. Peck, 8 Kan. 662; Ryan v. Caldwell, 106 Ky. 543; Parks Ex'r. v. Cooke, 3 Rush 168; Wheeler & Wilson v. Howard, 28 Fed. 741; Central Trust Co. v. Meridian L. etc., 51 L. R. A. 151 (N. S.); Green v. Frick, 25 S. D. 342, 126 N. W. 579; Hodge v. Wallace, 108 N. W. 212 (Wis.)

The holder of a judgment lien against mortgaged land may plead the statute of limitations against the mortgage.

Brandenstein v. Johnson et al., 140 Cal. 29, 73 Pac. 744; Wood v. Goodfellow 43 Cal. 185; Watt v. Wright, 63 Cal. 202, 5 Pac. 91; California Bank v. Brooks, 126 Cal. 198, 59 Pac. 302; Filipini v. Trobeck, 134 Cal. 441, 66 Pac. 587; DeVoe v. Runkle et al., 33 Wash. 604, 74 Pac. 836.

Gibbany & Epstein, of Roswell, for appellee.

Defense of statute of limitations is personal. 13 P. & P. 180; Miller v. City of Houston, 55 Fed. 336;

Hopkins v. Clyde 72 N. E. 846 (Ohio), 104 A. S. R. 737 and Judge Freeman's notes thereon, 1, 2, 3; Hall v. Jameson, 91 Pac. 518; 22 L. R. A. (N. S.) 1110.

Statute did not begin to run on default in payment of interest. Core v. Smith, 102 Pac. 114; 2 Jones on Mtgs. Sec. 1209a; Grafton Bank v. Doe, 19 Vt. 463, 47 A. D. 697; Watts v. Creighton, 85 Ia. 154, 52 N. W. 12; Hopkins v. Clyde, 72 N. E. 846, 104 A. S. R. 737, Note 2 and 3, 744 & 745; Neb. City v. Hydraulic, etc., 14 Fed. 763 Neb.; First Nat. Bank v. Park, 37 Colo. 303, 86 Pac. 106; Fletcher v. Daugherty, 13 Neb. 224, 13 N. W. 207.

## OPINION OF THE COURT.

PARKER, J. This is a suit by George H. Buss, appellee, against John H. Fox, E. F. Hardwick, and the Kemp Lumber Company, to recover a personal judgment against Fox, obtain a foreclosure of a mortgage executed by Fox, and determine the priority of claims between the appellee and Hardwick and the Kemp Lumber Company. The Kemp Lumber Company has perfected this appeal from a judgment rendered by the trial court in favor of the appellee. The facts, as gathered from the pleadings, are:

That on March 16, 1909, John H. Fox executed his note for $8,000, and to secure the payment thereof executed a mortgage and delivered same to Buss. The note contained the usual provisions, with this addition:

"In case of a default in the payment of any interest payment, then the whole principal sum shall become due and collectable. * * * "

The note provided that the principal sum should be paid on or before March 16, 1912. On June 11, 1909, the Wagnon Lumber Company recovered a money judgment against Fox. It was assigned to the appellant, the Kemp Lumber Company, on June 29, 1910, and a transcript of the judgment was docketed in the office of the county clerk on December 14, 1911. The mortgage was not filed for record until the 22d day of April, 1915. On May 3, 1916, the appellant filed

a suit to revive its judgment in the district court, and that suit was pending when the case at bar was instituted.

[1] The trial court determined this case upon the demurrer of appellee to the answer of appellant. The first question is whether the statute of limitations had run against the note and mortgage at the time this suit was instituted. The appellant contends that the statute of limitations began to run from the date of the default in the payment of the interest specified in the note—September 17, 1909—and not on March 16, 1912, the time specified for the payment of the principal. The appellee contends that the acceleration clause in the note implies that the holder is vested with the option of declaring the note due and payable in the event of a default in the payment of the interest, and the option not having been exercised, the statute did not begin to run until March 16, 1912. The trial court agreed with this contention. The question is one of first impression here. An examination of the cases discloses that such clauses have not been uniformly construed by the courts. The following statement appears in 17 R. C. L. "Limitation of Actions," § 161:

"Where a mortgage is given to secure several notes which fall due at different dates, the statute of limitations commences to run as to each note at maturity, and is not postponed until the maturing of the last note. But according to some authorities where a mortgage contains an acceleration clause to the effect that if there shall be a default of the payment of interest the principal sum secured shall forthwith become due and payable, the right of action to recover the principal accrues at once upon such a default, and the statute of limitations then begins to run against that right; it being said that such a clause is not a one-sided affair vesting a mere option in the mortgagee, but confers a right upon the mortgagor, equal with that given the mortgagee, to insist upon it and receive whatever advantage he can from its enforcement. * * * "

In the same section it is also said that other authorities hold that such a provision merely gives the option to the holder to declare the principal sum due and payable upon a default in the payment of interest;

the theory of such cases being that the clause is inserted for the benefit of the mortgagee, the option of such a character being a mere penalty. A collection of most of the cases on this subject will be found in the note to the case of Hall v. Jameson, reported in 12 L. R. R.A. (N. S.) 1190. See, also, Central Trust Co. v. Smith, 23 Okla. 909, 102 Pac. 114. It is apparent that the reason for the adoption of that rule by that court is predicated upon the objection that the other rule makes it necessary for the holder of negeotiable instruments containing such an acceleration clause to look elsewhere than to the instrument itself to determine when the same matures. We do not deem that such an objection warrants the court in making a contract for the parties. We prefer to hold with the rule announced by the court in the well-considered case of Snyder v. Miller, 71 Kan. 410, 80 Pac. 970, 69 L. R. A. 250, 114 Am. St. Rep. 489. The apparent reason for the adoption of that rule in that case was on account of the logic of the following statement contained in a case cited by that court:

"But a more fundamental consideration is that the parties made the contract. * * * Its language excludes the idea that the creditor may or may not 'treat the debts as due.' It becomes due in fact. If an election were all that the parties intended, words appropriate to that purpose should have be used."

The same quoted case also contained this statement:

"The question at last is one of construction of the language used, and that which makes it mean just what it says is not without reason or good authority to support it. * * * "

In Green v. Frick, 25 S. D. 342, 126 N. W. 579, the same doctrine was followed. The court said:

But to hold that a contract is optional which by its express terms is plainly absolute is unwarranted by any known rule governing the construction of contracts."

Our conclusion, therefore, is that the statute of limitations began to run in the case at bar upon the default in the payment of the interest installment.

[2] The second question presented is whether

a judgment creditor of a mortgagor may plead the statute of limitations against a cause of action by a mortgagee against the mortgagor, the judgment debtor, the suit being on the note and to foreclose the mortgage. The trial court held that the defense of the statute was personal to the mortgagor, and not having pleaded it for himself the judgment creditor was in no position to plead it for him. In 17 R. C. L. "Limitations of Actions," § 331, it is said:

"Although it is generally true that the statute of limitations is a plea personal to the debtor, which he may use or waive, as he pleases, and which one who is a stranger to him, standing in no relation of privity of estate with him, cannot use, yet where there is a privity between the party who could, if sued, plead the statute and the party offering to plead it, the latter may plead it to save his property. Such is the case with heirs, vendees, unless the grant is fraudulent, and mortgagees. Broadly speaking any person who claims title to, or interest in any real estate may invoke the aid of the statute of limitation as against a claimant, whose claim is prior in time to the person invoking the aid of the statute, where the prior claim has been barred by the statute of limitations."

A general statement of the doctrine will also be found in 25 Cyc. 1004, and in 14 A. & E. Enc. L. (2d Ed.) 184. In the last-mentioned work it is said that the rule is grounded upon privity of interest, and obtains with reference to strangers, although the latter, by being denied the right to plead the statute, may be seriously affected by the failure of the common debtor to plead the statute for himself. A majority of the cases sustain the view that a judgment creditor, in cases like those at bar, is in privity of estate with the mortgagor, his judgment debtor, and that he may plead the statute of limitations. In such cases it would seem on principle that no distinction can be made between the right of a judgment creditor to plead the statute and the right of a junior mortgagee. In the note to the case of Hopkins v. Clyde, reported in 104 Am. St. Rep. 737, the subject is fully discussed and most of the authorities cited. In Wood v. Goodfellow, 43 Cal. 185, 188, it was held that when third persons have subsequently acquired interests in the mortgaged

property they may invoke the aid of the statute of limitations against the mortgage, even though the mortgagor may have elected to waive its benefits. See also, Watt v. Wright, 66 Cal. 202, 5 Pac. 91; California. Bank v. Brooks, 126 Cal. 198, 59 Pac. 302; Wilde v. Stephens, 1 Wyo. 366; Brandenstein v. Johnson, 140 Cal. 29, 73 Pac. and De Voe v. Runkle 74 Pac. 836, holding that a judgment creditor may plead the statute of limitations in cases like the one at bar. North Dakota follows the Cali-fornia and Washington courts. Colonial & U. S. Mort-gage Co. v. Northwest Thresher Co., 14 N. D. 147, 103 N. W. 915, 919, 70 L. R. A. 814, 116 Am. St. Rep. 642, 8 Ann. Cas. 1160. On the contrary, in Columbia Ave., etc., Co. v. Strawn, 93 Tex. 48, 53 S. W. 342, it was held that the holder of a vendor's lien could not plead the statute of limitations in an action by the holder of another vendor's lien to foreclose the same; it being said that the liens were of equal dignity, and that the privilege of the plea of the statute belonged to the vendee, and not to either of the lienholders. The same conclusion was reached in Welton. v. Boggs, 45 W. Va. 620, 32 S. E. 232, 72 Am. St. Rep. 833, under similar facts. In Lamon v. Gold, 72 W. Va. 618, 620, 79 S. E. 728, 51 L. R. A. (N. S.) 883, the court said that strong argument had been presented to show that the doctrine of Welton v. Boggs, supra, was erroneous and contrary to the weight of authority, but a decision of the ques-tion was not made.

In a strict and technical sense a judgment creditor does not occupy such a relation to his debtor—the mortgagor—as to fall within the meaning of the word "privity," for there is no succession to the property of the debtor until a sale under execution is had and the judgment creditor has become vested with the title thereof. But a majority of the courts have enlarged the meaning of the word, and consequently have held that there is privity between the two before there is an actual devolution of the title of the property owned by the debtor, who happens here to be a mortgagor. The extent to which some courts have gone in enlarg-

ing the meaning of privity is shown by the following statement in Lord v. Morris, 18 Cal. 482:

"But it is said that the plea of the statute is a personal privilege of the party, and cannot be set up by a stranger. This, as a general rule, is undoubtedly correct with respect to personal obligations, which concern only the party himself, or with respect to property which the party possesses the power to charge or dispose of. But with respect to property placed by him beyond his control, or subjected by him to liens, he has no such personal privilege. He cannot at his pleasure affect the interests of other parties. His grantees, or mortgagees, with respect to the property, stand in his shoes, and can set up any defense which he might himself have set up to the action, either to defeat a recovery of the property or its sale."

We believe that the appellant occupied such a relation to the mortgagor that he was entitled to plead the statute of limitations in the case at bar.

[3] The complaint alleges that the appellee is in possession of the land described in the mortgage, and is renting the same and applying the proceeds thereof to the payment of the mortgage debt, with the consent of the mortgagor. The appellee argues that this takes the case out of the statute. He cites 2 Jones on Mortgages, § 715. That citation is to the general effect that neither the mortgagor, nor one claiming under him, can divest the mortgagee of possession, by ejectment or otherwise, until the debt is paid. The doctrine proceeds upon the equitable principle that "he who seeks equity must do equity." A number of cases holding that the statute of limitations does not run against a mortgagee in possession, a doctrine closely allied to the proposition that is cited in the work on Jones on Mortgages, supra, will be found in the note to the case of Pettit v. Louis, reported in 34 L. R. A. (N. S.) 356. The case itself held, among other things, that a mortgage, where the mortgagee is in possession, never becomes barred in the sense that the mortgagor or his grantee can ask a court of equity to quiet his title against the mortgage without himself doing equity by paying it. In 17 R. C. L. "Limitation of Actions," §359, it is said that the reason for the rule

is that possession itself is prima facie evidence that
the debt is not paid. Treating only the question as to
whether the possession of the mortgaged land by the
mortgagee, with the consent of the mortgagor, tolled
the statute, we are forced to the conclusion that it did
not. The reasoning upon which this conclusion is
reached is that our statutes of limitations make no ex-
ception on this account. Section 3348, Code 1915,
provides:

"Those (suits or actions) founded upon any bond, promis-
sory note, bill of exchange or other contract in writing,
* * * within six years."

· Section 3356, Code 1915, provides:

"Causes of action founded upon contract shall be revived
by an admission that the debt is unpaid, as well as by a new
promise to pay the same; but such admission or new promise
must be in writing, signed by the party to be·charged there-
with."

While the doctrine announced in some of the cases
heretofore cited, viz. that possession by the mortgagee,
with the consent of the mortgagor is prima facie evi-
dence that the debt is not paid, may be construed to
go to the extent of holding impliedly that the consent
of the mortgagor to the mortgagee's possession may
constitute an admission that the debt is not paid, still
under the circumstances of this case such an admission
would not fall within the terms of section 3356, supra.
The admission would not be in writing signed by the
party to be charged therewith. The same thing may
be said so far as reviving the debt by a new promise
is concerned. But admitting all this should we hold
the mortgagee's possession, with the consent of the
mortgagor, tolled the statute, notwithstanding that the
statute itself makes no such exception? In 17 R. C.
L. "Limitations of Actions," § 33, appears the follow-
ing:

"In the early years after their enactment, an inhospitable
reception was accorded by the courts to the legislative poli-
cies embodied in statutes of limitations. Among other means
of evading the letter of the law, the courts were in the habit

of implying exceptions at every opportunity. The courts in later years, while not inclined to deny or question the authority of the precedents importing into the statute certain exceptions, are usually unwilling to continue the practice of adding other exceptions which might be deemed wise, but which the Legislature has not seen fit to make. The general principle recognized today for the construction of statutes of limitation is that unless some good ground can be found in the statute for restraining or enlarging the meaning of its general words, they must receive a general construction, and that the courts cannot arbitrarily subtract from or add thereto, and cannot create an exception where none exists, even when the exception would be an equitable one. * * * "

At section 190 of the same work, it is said:

"As a general rule the courts are without power to read into these statutes exceptions which have not been embodied therein, however reasonable they may seem. It is not for judicial tribunals to extend the law to all cases coming within the reason of it, so long as they are not within the letter. * * * "

The doctrine is supported by numerous cases. In Bank of the State of Alabama v. Dalton, 9 How. 522, 529 (13 L. Ed. 242), the court said:

"The Legislature having made no exception, the courts of justice can make none, as this would be legislating. In the language of this court in the case of McIlver v. Ragan, 2 Wheat 29 (4 L. Ed. 175). 'Wherever the situation of the party was such as, in the opinion of the Legislature, to furnish a motive for excepting him from the operation of the law, the Legislature has made the exception, and it would be going far for this court to add to those exceptions.' The rule is established beyond controversy. * * * "

In Butler v. Craig, 27 Miss. 628, 61 Am. Dec. 527, it was held that:

"No equitable exceptions are to be ingrafted upon the statutes of limitation, and that where there is not express exception, the court cannot create one."

In Tynan v. Walker, 35 Cal. 634, 95 Am. Dec. 152, it was contended by one party that the fact that no person was in existence competent to sue did not prevent the operation of the statute of limitations. The court said:

"We have thus glanced at the condition of the law for the

purpose of showing that the rule which the plaintiff has invoked has its foundation in judicial construction, and not in the language or general purpose and design of the statute, and that it is opposed to all the well-established rules by which courts should be guided in ascertaining and giving effect to the will of the Legislature, and for the further purpose of justifying ourselves, if any justification be required, in adopting the same rule of construction in relation of the statute of limitations which we uniformly apply to all other statutes—that is to say,· to read it as it is written, wihout any arbitrary subtraction or addition to its meaning. The violation of this rule, as we consider, which we have noticed, can be accounted for only by referring it to the well known hostility of the courts, at an early day, to statutes of limitations. That hostility no longer exists, and with it, in our judgment, its effects also, should be allowed to pass away.

As the statute itself creates no exception to the running of the statute in favor of a mortgagee in possession none exists.

The judgment of the trial court will therefore be reversed, with directions to overrule the demurrer to the appellant's answer, and it is so ordered.

ROBERTS, J., concurs.

HANNA, C. J. I dissent from the conclusions reached on the second point by a majority of the court. I grant that a majority of the cases on the subject sustain the view that there is sufficient privity between a judgment creditor and his debtor to permit the former to plead the statute of limitations in an action by a mortgagee to foreclose a mortgage given by the judgment debtor. Those cases, however, have extended the meaning to be given the word "privity" beyond its strict and proper meaning, and are in conflict with this court's definition of the word as laid down in Smith & Ricker v. Hill Bros., 17 N. M. 415, 134 Pac. 243, where we said:

"It is more generally defined as a mutual or successive relationship to the same right of property."

The appellant in the case at bar, being a mere judgment creditor, who acquired a general lien on the property of his debtor, the mortgagor, occupied no mutual or successive relationship to the mortgaged property. His only right in the premises was to. sub-

State v. Rosenwald, 23 N. M., 578

ject the property to a sale under his execution. He never stood in the shoes of his debtor, and I am un; able to agree that he stood in privity with the debtor so as to be enabled to plead the statute in the stead of the debtor. The doctrine extended to its logical end will permit a second mortgagee to plead the statute against a first mortgagee even though the debtor does not elect to plead it for himself. Therefore I dissent.