#28454-r-GAS
**2018 S.D. 56**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

CODY WORK,                                    Plaintiff and Appellant,

    v.

RUSS ALLGIER,                                 Defendant and Appellee.


\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE ROBERT A. MANDEL
Judge

\* \* \* \*


MICHAEL S. BEARDSLEY of
Beardsley, Jensen & Lee, Prof. LLC
Rapid City, South Dakota          Attorneys for plaintiff and
appellant.


JASON M. SMILEY of
Gunderson, Palmer, Nelson
 & Ashmore, LLP
Rapid City, South Dakota          Attorneys for defendant and
appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON MAY 21, 2018
OPINION FILED **07/11/18**

#28454

SEVERSON, Retired Justice

[¶1.]     In this breach of contract case by a creditor to recover unpaid installments under a promissory note, the debtor moved for summary judgment. The debtor relied on an acceleration provision in the note and asserted that the statute of limitations had expired on the creditor's claim six years after the debtor defaulted. The creditor resisted summary judgment, asserting that a jury must determine whether the debtor's conduct following default warranted a different limitation period. After a hearing, the circuit court granted the debtor summary judgment. We reverse and remand.

## Background

[¶2.]     In February 2009, Cody Work entered into a stock purchase agreement for the sale of 1,500 shares of Premier Home Mortgage, Inc. stock to Russell Allgier for $375,000. Under the parties' agreement, Allgier agreed to: (1) assume Work's $40,000 loan obligation to the company; (2) pay Work $75,000 at closing, $15,000 on March 15, 2009, and $15,000 on April 1, 2009; and (3) pay the remaining balance ($230,000) plus interest in 54 monthly installments. Allgier executed a promissory note in favor of Work for $230,000. The note set forth that Allgier would pay Work $4,977.54 per month for 54 months beginning on May 15, 2009, and ending on October 15, 2013. The promissory note contained an automatic acceleration provision, rendering the entire obligation due in full upon default in payment of any installment or default in payment of interest due.

[¶3.]     This appeal concerns Allgier's payments under the promissory note. It is undisputed that Allgier made the first payment late, which Work accepted. He

-1-

also made untimely or partial payments from November 2009 through November 2010, which payments Work accepted. Allgier did not make a payment for the installment due on December 15, 2010, and made no other payments under the note. The parties treated December 15, 2010 as the date of default. It is arguable, however, that Allgier defaulted under the note when he failed to timely make the first payment on May 15, 2009.

[¶4.] Nevertheless, the parties agree that following Allgier's failure to make the payment due in December 2010, the two discussed alternate ways Allgier could satisfy his debt to Work. The parties continued their discussions into 2015. The parties dispute whether they came to a new agreement. According to Allgier, he and Work reached a new agreement, although they did not reduce it to writing. Allgier relied on copies of emails as evidence of the agreement.

[¶5.] Ultimately, Work brought suit against Allgier for breach of contract under the note. He commenced suit on April 4, 2017. Allgier answered and moved for summary judgment. He argued that the statute of limitations had expired on Work's cause of action in December 2016 because more than six years had elapsed from Allgier's December 2010 default under the note. According to Allgier, Work's cause of action accrued on December 15, 2010 based on the fact that the automatic acceleration provision in the note rendered Allgier's debt due in full upon default.

[¶6.] In response, Work asserted that his claim did not accrue until Work elected to enforce the acceleration provision against Allgier. Under this view, because Work did not elect to accelerate the debt, Work claimed he is entitled to recover for the unpaid installments that came within the limitation period. Work

alternatively claimed that the parties' negotiations and discussions following default created a question of fact on Allgier's right to assert that the debt accelerated. In Work's view, it would be unjust to allow Allgier to use the acceleration provision against Work when Work continually exercised leniency toward Allgier despite Allgier's late, partial, or absent payments under the note.

[¶7.] After a hearing, the circuit court granted Allgier summary judgment. The court concluded that Work's cause of action accrued in December 2010, and therefore, the statute of limitations had expired in December 2016. Work appeals, asserting that the circuit court erred when it granted Allgier summary judgment.

**Standard of Review**

[¶8.] Our standard of review from a decision to grant summary judgment is well settled:

> We must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*East Side Lutheran Church of Sioux Falls v. NEXT, Inc.*, 2014 S.D. 59, ¶ 8 n.4, 852 N.W.2d 434, 438 n.4 (quoting *De Smet Farm Mut. Ins. Co. of S.D. v. Busskohl*, 2013 S.D. 52, ¶ 11, 834 N.W.2d 826, 831).

## Analysis

[¶9.] In 1910, this Court held that an automatic acceleration provision in a promissory note self-executes upon the happening of the stated condition, thereby causing the entire debt to mature and the statute of limitations to commence against the indebtedness. *Green v. Frick*, 25 S.D. 342, 126 N.W. 579, 581 (1910). In contrast, an optional acceleration provision gives the creditor the option to elect to accelerate the debt upon the happening of the stated condition, and the statute of limitations does not begin to run on the entire obligation unless "the creditor affirmatively and unequivocally makes known to the debtor [the creditor's] intention to declare the whole debt due." *See H.C. Clark Implement Co., Inc. v. Wiedmer*, 389 N.W.2d 816, 817 (S.D. 1986) (interpreting an optional acceleration provision in an installment sales contract).

[¶10.] It is undisputed that this case involves an automatic acceleration provision. The provision provides:

> In the case of default in payment of any installment or of any interest when due, the whole of this note, both principal and interest *shall be immediately due and payable.* The maker hereof hereby waives presentment for payment, notice of nonpayment, protest and notice of protest.

(Emphasis added.) The parties treated December 2010 as the date of default. Under *Frick*, therefore, the entire debt matured upon Allgier's default, and the statute of limitations commenced on Work's cause of action against Allgier to recover under the note.

[¶11.] Work, however, asks this Court to reconsider its decision in *Frick* and adopt the view that a statute of limitations does not begin to run upon default

under a promissory note, regardless of the automatic acceleration provision in the note, unless the creditor exercises the option to accelerate the debt. Work directs this Court to cases from other jurisdictions for the proposition that an acceleration provision, although absolute, is not self-executing, and therefore, the creditor's cause of action does not accrue until "the creditor takes positive action indicating that [it] has elected to exercise the option." *Nat'l Bank of Commerce Trust & Savings Ass'n. v. Ham*, 592 N.W.2d 477, 480 (Neb. 1999); *accord Casper v. Bell's Estate*, 218 S.W.2d 606, 609 (Mo. 1949); *Tower Grove Bank & Trust Co. v. Duing*, 144 S.W.2d 69, 71 (Mo. 1940).

[¶12.] According to Work, the above cases represent the more reasoned view. He emphasizes that an acceleration provision is solely for the benefit of the creditor. Thus, according to Work, a debtor should not be able to use the acceleration provision to escape a contractual obligation when a creditor declines to accelerate the debt. To conclude otherwise, Work argues, would prohibit creditors from exercising leniency toward debtors and would discourage parties from attempting to resolve their disputes without litigation.

[¶13.] In *Frick*, John J. and Mary Frick executed a mortgage in favor of Sayles Green, which mortgage was secured by seven promissory notes. 25 S.D. at 342, 126 N.W. at 579. The Fricks never made a payment on the promissory notes. Green brought an action against the Fricks to foreclose on the purchase-money mortgage and sought a deficiency judgment on the debt due under the notes. In response, the Fricks claimed that the statute of limitations had expired on Green's foreclosure action and on his right to recover the debt due on the notes. The Fricks

relied on an acceleration provision in the mortgage, asserting that "the entire indebtedness became due and collectible on default in payment of the first note due December 1, 1895, and that the whole indebtedness [was] barred by the six-year statute[.]" *Id.* at 342, 126 N.W. at 580. The Fricks further claimed that because the indebtedness was barred, the mortgage was also barred because it was "merely an incident to the indebtedness." *Id.* The trial court disagreed, and entered a decree of foreclosure and an order for a deficiency judgment on the notes.

[¶14.] On appeal, the Court upheld the trial court's decree of foreclosure. It is well settled that an expired statute of limitations on an indebtedness "in no manner affected the right of the mortgagee to foreclose his mortgage and subject the mortgaged property to the lien in satisfaction of the indebtedness." *Id.* at 342, 126 N.W. at 581. However, the Court reversed the trial court's order for a deficiency judgment on the notes. *Id.* at 342, 126 N.W. at 583.

[¶15.] The Court recognized that an acceleration provision is for the benefit of the creditor. The Court also noted that courts across the nation differed in their interpretations of an automatic acceleration provision. In examining the various decisions, the Court in *Frick* observed that some courts hold that automatic acceleration provisions are optional, regardless of their self-executing nature. Thus, upon default, the creditor holds the option to declare the whole sum due, and the statute of limitations would not commence until the creditor exercised the option. In contrast, other courts have held that automatic acceleration provisions, although for the benefit of the creditor, mean just what they say: the entire debt matures upon default under the terms of the parties' agreement.

[¶16.] After examining the conflicting views, the Court in *Frick* rejected the view that an automatic acceleration provision is optional. It stated, "[T]o hold that a contract is optional which by its express terms is plainly absolute is unwarranted by any known rule governing the construction of contracts." *Id.* at 342, 126 N.W. at 581. The Court favored a "construction of the language used." *Id.* at 342, 126 N.W. at 582. Further, the Court recognized that "[w]here the purpose is only to give the option to the creditor, language expressive of it may be easily inserted." *Id.* The Court adhered to the rules of contract interpretation and declared that it would construe the acceleration provision according to its "plain import[.]" *Id.* at 342, 126 N.W. at 581. Because "the specific language of the mortgage" provided that "the entire indebtedness became due and collectible upon default in payment of the first note," the Court held that "the six-year statute of limitations began to run against all the notes from the date of such default." *Id.* at 342, 126 N.W. at 582.

[¶17.] Since *Frick*, courts across the nation continue to be in conflict. Further, many of the cases examining the significance of self-executing language in an acceleration provision were decided long ago. For example, the following cases hold that the statute of limitations commences upon the happening of the stated condition. *See e.g., Found. Prop. Inv. v. CTP, LLC*, 186 P.3d 766, 772 (Kan. 2008); *accord Baader v. Walker*, 153 So. 2d 51, 54 (Fla. Dist. Ct. App. 1963); *Barnwell v. Hanson*, 57 S.E.2d 348, 351 (Ga. Ct. App. 1950); *Perkins v. Swain*, 207 P. 585, 586 (Idaho 1922); *Cowan v. Murphy*, 333 N.E.2d 802, 806 (Ind. Ct. App. 1975); *Curry v. Winnfield*, 398 So. 2d 97, 98 (La. Ct. App. 1981). In contrast, these cases hold that the statute of limitations commences upon creditor election to enforce debt.

*American Jet Leasing v. Flight Am., Inc.*, 537 F. Supp. 745, 748 (D. Va. W.D. 1982);

*Chase Nat'l Bank of New York v. Burg*, 32 F. Supp. 230, 233 (D. Minn. 1940);

*Village of Filley v. Setzer*, 858 N.W.2d 258, 265 (Neb. Ct. App. 2014); *Wurzler v.*

*Clifford*, 36 N.Y.S.2d 516, 518 (N.Y. Sup. Ct. 1942); *Town of Farmville v. Paylor*,

179 S.E. 459, 461 (N.C. 1935); *Mayor and Aldermen of Morristown v. Davis*, 110

S.W.2d 337, 341 (Tenn. 1937).

[¶18.]     We conclude that *Frick* remains good law.  The Court in *Frick*

specifically considered that an acceleration clause is for the benefit of the creditor.

The Court also examined the reasoning in support of interpreting the clauses to be

optional despite the absolute language.  Ultimately, the Court found more

compelling a construction that gave meaning to the terms used by the parties.  This

reasoning remains sound.  Because Work presents no compelling reason to overrule

*Frick*, we decline to reconsider its holding.  If parties intend to draft an acceleration

provision to give only the option to accelerate, language to that effect can be used.

Here, the specific language of the acceleration provision unambiguously provides

that the entire debt under the note became due upon Allgier's default.  Therefore,

the six-year statute of limitations governing Work's right to recover against the

indebtedness commenced in December 2010, if not earlier.

[¶19.]     Alternatively, Work claims that *Frick* is distinguishable because, here,

the parties waived the self-executing effect of the acceleration provision.  Work

notes that in *Frick*, the debtors did not make any payments under the note, and in

this case, Allgier made multiple payments and the parties discussed possible

alternative ways for Allgier to satisfy his obligation.  Work further claims that the

Court in *Frick* recognized an exception to the rule that an automatic acceleration provision self-executes. In particular, Work directs this Court to the following statement in *Frick*: "It follows that when upon default in the payment of the first installment, the whole debt matured according to the terms of the contract, the cause of action upon it accrued and limitation began and continued to run, *unless the transactions between the parties changed their rights as they existed after the default was made*." 25 S.D. at 342, 126 N.W. at 582 (emphasis added).

[¶20.] Contrary to Work's claim, the Court in *Frick* did not recognize an exception to the rule that an automatic acceleration provision self-executes upon the stated condition, thereby causing the entire debt to mature and the statute of limitations to commence. Rather, the "unless" language in *Frick* is a recognition that parties can waive known and existing rights conferred by law or contract and can be estopped from enforcing known and existing rights conferred by law or contract. *See, e.g., Harms v. Northland Ford Dealers*, 1999 S.D. 143, ¶ 17, 602 N.W.2d 58, 62 (explaining waiver and estoppel).

[¶21.] In response, Work asserts that "[t]he right to call on the balance of a debt owed upon default of an installment payment is conferred by contract *to the creditor*"; therefore, Work's waiver of the right to accelerate the debt means Allgier has no right to rely on the fact the debt accelerated. (Emphasis added.) It is true that the acceleration provision afforded Work the right to call on the balance of the debt owed and that Work could waive that right. *See, e.g., Smith v. Smith*, 352 P.2d 1036 (Kan. 1960) (acceleration rights can be waived by conduct of the creditor). But Work directs us to no law to support his claim that a *creditor's* waiver of the right to

accelerate the debt means the *debtor* waived the right to assert the statute of limitations as a defense.

[¶22.] It is important to note that this case does not concern whether Work— by not enforcing his right under the acceleration provision—waived the right to accelerate the debt against Allgier. Indeed, Work did not attempt to accelerate the debt and seeks only to recover the unpaid installments from April 15, 2011 to October 15, 2013. Therefore, this case concerns whether *Allgier* may rely on the statute of limitations as a defense.

[¶23.] "Ordinarily, the statute of limitations defense is personal and cannot be asserted for someone else." *Kobbeman v. Oleson*, 1998 S.D. 20, ¶ 21, 574 N.W.2d 633, 640. Therefore, Work's action or inaction following Allgier's default cannot, standing alone, "change the rights of the parties resulting from the maturity of the debt." *See Snyder v. Miller*, 80 P. 970, 973 (Kan. 1905) (quoting *San Antonio Real Estate Bldg. & Loan Ass'n v. Stewart*, 61 S.W. 386, 388 (Tex. 1901)). However, because "[t]he statute of limitations is a personal defense," it also follows that "the defendant by his conduct may be estopped from setting it up." *Kroeger v. Farmer's Mut'l Ins. Co.*, 52 S.D. 433, 218 N.W. 17, 17 (1928); *accord Kobbeman*, 1998 S.D. 20, ¶ 21, 574 N.W.2d at 640; *L.R. Foy Const. Co., Inc. v. S.D. State Cement Plant Comm'n*, 399 N.W.2d 340, 343-44 (S.D. 1987). Thus, while neither Work nor Allgier "could impair the rights of the other, each could waive his own rights as they accrued from the default in payment of an installment so as to estop him from relying upon such default." *See Snyder*, 80 P. at 973; *see also Waugh v. Lennard*,

211 P.2d 806, 812 (Ariz. 1949) (discussing the application of estoppel to prevent the debtor from asserting the defense of statute of limitations).

[¶24.] When the circuit court granted summary judgment, it did not specifically examine whether a material issue of fact was in dispute on the question whether Allgier's conduct post default should prevent Allgier from relying on the statute of limitations as a defense to Work's suit. We, therefore, review the record to determine whether Work presented "specific facts showing that a genuine, material issue for trial exists." *East Side Lutheran Church of Sioux Falls*, 2014 S.D. 59, ¶ 8 n.4, 852 N.W.2d at 438 n.4.

[¶25.] In response to Allgier's motion for summary judgment, Work presented evidence that the parties engaged in discussions following Allgier's default and up until 2014 or 2015, in order to determine an alternative way Allgier could pay off the note. In particular, Work presented evidence of Allgier's answers to interrogatories, which referred to emails produced during discovery that had been sent between the parties. In one answer, Allgier claimed that "[t]he parties entered into a new agreement[.]" Allgier explained that following his default, he and Work agreed "that any remaining obligations under the Purchase Agreement and the Promissory Note [were] discharged and Cody Work would receive overrides, commissions, and other consideration and compensation beyond a normal salary and commission." Allgier further claimed that the payroll documents in the record supported the view that the parties reached a new agreement, raising a question of novation.

[¶26.]    Work, on the other hand, asserted that the parties never reached a binding agreement.  He presented evidence that following default, Allgier acknowledged his obligation to satisfy the debt under the note and that the two "attempted to negotiate an alternative deal with Allgier for years after Allgier stopped paying on the note."  Work also relied on emails between the parties, which included language indicating that a new agreement had yet to be signed.

[¶27.]    It is well settled that "[s]ummary judgment is proper on statute of limitations issues only when application of the law is in question, and not when there are remaining issues of material fact."  *Greene v. Morgan, Theeler, Cogley & Petersen*, 1998 S.D. 16, ¶ 6, 575 N.W.2d 457, 459.  From our review of the record, a material issue of fact is in dispute regarding whether Allgier "waive[d] his own rights as they accrued from the default in payment of an installment so as to estop him from relying upon such default."  *See Snyder*, 80 P. at 973.

[¶28.]    Reversed and remanded.

[¶29.]    GILBERTSON, Chief Justice, and ZINTER, KERN, and JENSEN, concur.

[¶30.]    SALTER, Justice, not having been a member of the Court at the time this action was assigned to the Court, did not participate.