No. 34,488

THE FRANKLIN LIFE INSURANCE COMPANY, *Appellee*, v. CAROLYN DAY, *Appellant* (MARION A. NEAL, M. E. NEAL et al., *Defendants*).

(96 P. 2d 630)

Opinion filed December 9, 1939.

*C. H. Brooks, Howard T. Fleeson, Carl G. Tebbe, Wayne Coulson, Paul R. Kitch,* all of Wichita, and *Carl Ackerman,* of Sedan, for the appellant.

*C. J. Sloop,* of Independence, for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This was an action to foreclose a mortgage on real property. Two defendants, as sole heirs of the mortgagors, invoked the statute of limitations. Their demurrer was overruled. Some uncontroverted testimony and a mass of correspondence was introduced, and the trial court gave judgment for plaintiff. One of the defendant heirs acquiesced. The other has appealed.

It appears that in July, 1927, one S. D. Aulls and his wife borrowed $12,800 from the plaintiff company, executing their promissory note therefor, payable on August 1, 1932, with 5 percent interest. As security they executed a mortgage on a section of Chautauqua county land. Aulls died in 1931 and his wife in 1932, both intestate. Their two daughters, Marion A. Neal and Carolyn Day, defendants herein, are their only heirs.

Default was made on the indebtedness at its maturity, and this action to foreclose the mortgage was begun on May 12, 1938, some 5 years, 9 months, 11 days thereafter.

To toll the statute of limitations plaintiff alleged—

"That said mortgage indebtedness became due by its terms on August 1, 1932; that the heirs at law of said S. D. Aulls, deceased, were unable at said time to pay said mortgage indebtedness and thereafter, orally and in writing, as hereinafter set out, requested plaintiff to extend the time for the payment of said mortgage and accruing interest thereon, and they orally and in writing agreed to pay the same, as hereinafter set out."

The petition also alleged that Carolyn Day stated orally to plaintiff's agents that she was not well and not in a condition to transact business, and she requested that all negotiations be had with her sister, Marion A. Neal, whom she had authorized to act for her, and—

" . . . That in compliance with said oral request plaintiff had all further negotiations, both oral and written, with the said Marion A. Neal; that in the interviews had by plaintiff's said authorized representatives with the said Marion A. Neal she, on behalf of herself and her said sister, orally requested extension of time for the payment of said mortgage debt and the interest thereon and for herself and her said sister agreed to pay said mortgage debt and orally requested plaintiff not to foreclose said mortgage; and she stated that the expense of foreclosure was unnecessary and that she and her sister would prefer to make a deed covering said lands to plaintiff with a contract to repurchase said premises in eighteen months."

Plaintiff also alleged that "said oral agreements" were confirmed by letters written by Marion A. Neal, and excerpts thereof were attached to plaintiff's petition. Plaintiff further alleged—

"That under and pursuant to *said oral and written agreements and promises to pay plaintiff said mortgage debt, plaintiff did extend the time of payment of said indebtedness* but said defendant owners have been unable to pay said indebtedness or refinance the same and they have wholly failed to convey said mortgaged premises to plaintiff." [Italics ours.]

Judgment *in rem* for the amount of the Aulls indebtedness was prayed for, and that the mortgage be foreclosed, the property sold and the proceeds disbursed according to law.

Defendants filed a verified answer. It contained a general denial, but admitted their parents' execution of plaintiff's note and mortgage, that their parents had both died intestate, and that they were their only heirs.

Answering further, defendants denied generally and specifically the matters pleaded by plaintiff to toll the statute of limitations. They also interposed the five-year provision of that statute to bar plaintiff's action.

Plaintiff's verified reply was a general denial.

Plaintiff called as witnesses three of its representatives. One of these, Aldrich, testified that in Bucklin in December, 1936, he par-

ticipated in a conversation between Mrs. Marion A. Neal and Mrs. Carolyn Day and one Humphrey who, like himself, was an agent of plaintiff; that Mrs. Neal proposed to put up a deed signed by herself and her sister conveying the property to plaintiff "in escrow," and that—

" '. . . it stay there in escrow for eighteen months, and during that eighteen months we have the privilege of paying the principal of the loan, $12,800, and your company, canceling the mortgage and then we get the deed back? If, during that eighteen months we do not pay the principal of the loan a deed goes to the Franklin Life Insurance Company.' I told Mrs. Neal and Mrs. Day that that proposition wouldn't be acceptable to the company, but I offered an alternative proposition. . . . Mrs. Neal and Mrs. Day objected to that proposition. . . . They suggested that they give us a deed and take back a repurchase option. Mrs. Neal was the spokesman and Mrs. Day was there at the conversation, a part of it. She was in the circle. When they suggested that we give them a repurchase—the privilege of repurchasing for $12,800, I wasn't authorized to make that kind of discount, and I stated that I would take it up as soon as I got back to the office and let them hear through Mr. Humphrey whether the company would accept that proposition or not."

Humphrey, another agent of plaintiff, told of a conversation he had with Mrs. Marion A. Neal in Bucklin in March, 1934. He testified:

"A. Mrs. Neal said that they expected to pay this mortgage and if the company would—they would pay it if the company would be patient with them, and at that time they had made application with the Federal Land Bank for a new loan to take up the loan.

"Q. And that was all that was said at that time? A. That was all.

"[Counsel for defendants]: I object to this as far as Carolyn Day is concerned.

"The Court: It will not be considered so far as Mrs. Day is concerned. . . .

"Q. Did you have another conversation with Mrs. Neal other than the one time? A. Yes, I went back there the second time, in May, 1936.

"Q. State as near as you can what you said to Mrs. Neal at that time and what she said to you relative to this loan.

"[Counsel for defendants]: We object to it as far as Mrs. Day is concerned.

"The Court: It will be sustained as to Mrs. Day. . . .

"Q. Did you have any further conversation with Mrs. Neal? A. We just talked in a general way about business conditions. She said she didn't want the company to foreclose on this mortgage and I told her we didn't want to, and would rather work it out the other way if we could. . . .

"Q. State just what was said by you and Mrs. Neal relative to a foreclosure or their executing a deed to the property. A. Well, it was along the line I have testified to; that she didn't want a foreclosure, they intended to pay it, rather than have a foreclosure they would make a deed."

Lloyd, another agent of plaintiff, testified:

". . . My duty is to try to determine what is the best plan to deal with delinquent loans and to try to have the delinquency brought up. I made a trip out to the Aulls farm to go over the property and also to confer with the owners. That was in 1936. Mr. Aldrich was with me."

Lloyd testified that he met the defendants at a bank in Bucklin in 1936, that various sundry proposals and counter proposals for dealing with the loan and mortgage were suggested, all of which came to naught. He testified:

". . . But the proposition was finally boiled down—the proposition that was made to put a deed up in escrow was not satisfactory, and the proposition was boiled down to taking eighteen months for redemption and paying the face value of the loan, $12,800.

"Q. Who did most of the talking? A. Mrs. Neal was spokesman for them.

"Q. Did Mrs. Day hear all that was said? A. I think she did. . . .

"Q. Did Mrs. Day say anything during these conversations? A. She only answered Mr. Aldrich's question as to her name and the fact that she was a widow. That's all I can recall distinctly. . . .

"Questions by the Court:

"Q. Who was this proposition boiled down by? A. The proposition made to them was to pay the loan. The best we could obtain after—

"Q. What did they say to that? A. They said it wouldn't be considered. It was impossible. . . .

"Q. What did Mrs. Neal say . . . that caused you to try to do more? A. They seemed to find it difficult or impossible. We were not arriving anywhere on that basis. We tried to get an assignment of the rental money for the oil lease if the oil lease was effected, and I think I failed in that, too. I failed in getting that. . . .

"Q. What did Mrs. Neal say she would do, if anything? A. She finally said she would put the deed up in escrow and if they were not able to redeem it at the end of that period they would give a deed to it. That was the conversation. . . .

"Q. What did you say in response to that? A. I said to her that we would recommend that the company accept that. . . ."

In the mass of letters which passed between Mrs. Marion A. Neal were a number of statements which the trial court deemed of sufficient evidential significance to incorporate in its extended findings and conclusions. We can only give space to a few, but they are typical:

"May 12, 1933. We will pay the tax when due if the loan can be extended.

"Nov. 20, 1936. Will take care of the delinquent taxes if some deal can be made for the next eighteen months. . . .

"July 27, 1933. We will place our application for a loan with the government and advise you just what can be done in regard to refinancing this loan.

"January 23, 1934. All that we can do in connection with this loan and interest is to transfer the loan to a federal loan, . . . but since . . .

"October 8, 1935. Since writing you we have been in correspondence with the secretary of the Chautauqua County Loan Association in regard to our new application and he advises us to obtain a statement from the Franklin Life Insurance Company that they would accept the proceeds of the highest approval that we can get. . . .

"In answer to a letter from the plaintiff in which it stated that Mr. Humphrey was now recommending foreclosure of the loan, Mrs. Neal, among other things, wrote this:

" 'In regard to the above-mentioned loan we have been unable to obtain a federal loan to take care of our loan that is delinquent. Rather than have you foreclose on this land we would be willing to put up a deed and contract on this land redeemable in eighteen months and at the end of that time unless we are able to redeem the land the deed would be turned over to you at the expiration of eighteen months. We would like to own this land but unless you are willing to make a good reduction on the mortgage we are unable to obtain a loan to refinance the present mortgage.' . . .

"January 21, 1937. We have had an inquiry about leasing this land and if we are able to lease the land for oil we would want to be able to make this lease under the [proposed] repurchase agreement.

"March 10, 1937, writing relative to the oil and gas lease: 'The parties that are making this lease may ask that you sign the lease due to the mortgage being delinquent. You will advise us if our leasing according to the enclosed lease meets with your approval.'

"March 18, 1937. On account of the mortgage being past due they thought it better to have the Franklin people sign the lease."

Defendants' demurrer to plaintiff's evidence was overruled. The trial court specifically found that the letters of Mrs. Neal as quoted above and otherwise, were sufficient to toll the statute of limitations so far as she herself was concerned, but were insufficient to deprive Mrs. Day of the protection of the statute. The court, however, did hold that Mrs. Day was bound by what was said and done at the defendants' meeting with plaintiff's representatives in the bank at Bucklin. Its informal findings, in part, read:

"However, a meeting was arranged for, in some way, to be held in the bank at Bucklin between representatives of the plaintiff and these defendants, and both Mrs. Day and Mrs. Neal were present at that interview. . . .

"It is quite apparent that during this meeting it was several times suggested that the defendants would prefer to give a deed to the property rather than have the mortgage foreclosed, and in the judgment of the court this evidence shows such a recognition of this mortgage on the part of Mrs. Day as to remove her from the protection of the bar of the statute of limitations, and the court is of the opinion that the plaintiff is entitled to a judgment foreclosing its mortgage."

In addition to these specific findings, the court made a general finding which recited that "on the issue of the foreclosure of the mortgage sued on herein the court finds generally in favor of plaintiff and against the defendants."

Judgment was entered accordingly and Carolyn Day appeals, contending that the evidence was insufficient to toll the statute of limitations. On this point we have no concern with the sufficiency of the evidence to deprive Mrs. Marion A. Neal of the protection of the statute. But as to Mrs. Day the trial court found that the correspondence between Mrs. Neal and the plaintiff was insufficient to bind Mrs. Day.

Touching the conference between plaintiff's representatives and the two defendants in the Bucklin bank, it is too clear for cavil that that conference failed of its purpose. The conferees reached no agreement. At its conclusion Mrs. Neal, on behalf of herself and sister, finally said "she would put up a deed in escrow and if they were not able to redeem it at the end of that period they would give a deed to it."

"Q. What did you [witness Lloyd] say in response to that? A. I said to her that we would recommend that the company accept that."

The company did not accept that final proposition. No deed was executed and placed in escrow. Nothing was said, nothing was done by Mrs. Carolyn Day nor in her behalf at that conference in the Bucklin bank which deprived her of the benefit of the statute of limitations. (*Miles v. Hamilton,* 106 Kan. 804, 189 Pac. 926, syl. ¶ 3; *Updegrove v. Cooper,* 147 Kan. 752, 78 P. 2d 843.)

To sustain the judgment, counsel for appellee argues that defendants paid taxes and kept up the insurance on the property after the maturity of the mortgage indebtedness, thereby recognizing the mortgage which in its specific terms had bound the original mortgagors to that effect. But on this point counsel for appellee is arguing for something outside the record. There was no evidence of such payments. Moreover, the fact of defendants' payment of taxes or insurance premiums, if they did pay them, was quite as consistent with the theory that they were protecting their own interest in the property as that they were recognizing the continued validity of plaintiff's mortgage. (*Snyder v. Miller,* 71 Kan. 410, 80 Pac. 970; see, also, *Spesard v. Spesard,* 75 Kan. 87, 88 Pac. 576, syl. ¶ 5.)

Furthermore, plaintiff's petition contained no allegation that defendants did pay taxes or insurance premiums. What plaintiff did

plead to toll the statute was certain "oral and written agreements to pay plaintiff said mortgage debt" and that pursuant thereto "plaintiff did extend the time of payment of said indebtedness." That allegation, which was the vital matter to be proved to toll the statute, was not supported by any evidence. An agreement, whether oral or written, requires the assent of both parties. Not only was there a total dearth of evidence to prove an agreement but the evidence adduced by plaintiff's witnesses to prove such alleged agreement did prove the complete failure of plaintiff's representatives and defendants to reach any agreement.

Counsel for appellee stress the general finding of the court "on the issue of the foreclosure of the mortgage." As we have seen, however, that general finding was not sustained by evidence and cannot stand as against Carolyn Day.

The judgment of the district court is reversed and the cause remanded with instructions to enter judgment in favor of Carolyn Day, appellant herein.